STATE of Minnesota, Petitioner, Appellant,

v.

Travis Wade KOENIG, Respondent.

No. C4–02–303.

Supreme Court of Minnesota.

July 31, 2003.

Michael A. Hatch, Minnesota Attorney General, Amy Klobuchar, Hennepin County Attorney, Jean E. Burdorf, Assistant County Attorney, Minneapolis, MN, for Appellant.

Joseph S. Friedberg, Lisa Lodin Peralta, Minneapolis, MN, for Respondent.

## OPINION

ANDERSON, Paul H., Justice.

In the early morning hours of June 10, 2001, Travis Wade Koenig engaged in sexual activity with a 13–year–old girl whom he met through a telephone dating service. Koenig was subsequently charged with three counts of sexual misconduct, including child solicitation under Minn.Stat. § 609.352, subd. 2 (2002). The Hennepin County District Court dismissed the solicitation charge for lack of probable cause, finding that the child initiated contact with Koenig, willingly participated in multiple sexually-explicit conversations, and willingly decided to meet Koenig to engage in sexual activity. The court of appeals affirmed, concluding that the child's receptive attitude and conduct left no opportunity for Koenig to solicit the child for sexual conduct. We reverse.

On the evening of June 9, 2001, respondent Travis Wade Koenig, then 31 years old, was on duty as a police officer in the City of Minneapolis. While on duty, Koenig placed several calls from his department-issued cellular telephone to the Minnesota Casual Sex Dateline. The calls were not recorded, but through an administrative subpoena, the police were able to obtain Koenig's telephone records and verify that he had placed the calls to the dateline service. Koenig subsequently admitted that he made the calls and that he did so because he was in search of someone ready to have a sexual encounter. According to Koenig, users of this dateline service can post recorded messages to which other callers can then listen and respond if they choose.

Koenig was listening to messages posted by female callers when he heard a message posted by R.P. and J.L. According to Koenig, the message stated that the callers were two "hot chicks" from St. Louis Park who wanted to "party like rock stars," were into "sex parties," and could "go all night long." Koenig testified that the message also stated something to the effect that the listener should call "if you think that you can keep up." The message also stated that the callers were 18 and 19 years of age. At the time, R.P. was 13 and J.L. was 15.

Koenig responded to the message by leaving a voice-mail mentioning oral sex and stating that he would like to take the callers up on their offer. According to Koenig, R.P. replied by voice-mail, stating that she thought Koenig's voice was sexy, inquiring if Koenig was muscular, and also inquiring about the "type of sex stuff" he liked. This response started an exchange of approximately six or seven explicit voice-mail messages discussing various sexual acts. Koenig and R.P. then decided to talk live instead of via voice-mail. Koenig and R.P. talked by telephone for approximately 70–80 minutes. Koenig testified that R.P. told him about her sexual history and "what she likes and doesn't like." At some point, Koenig also briefly talked to J.L.

During one of the conversations, R.P. decided to take another call, which she termed a "booty call."[1] Koenig, thinking this was an excuse to end the conversation, told R.P. that he did not believe that she was going to call him back. Koenig testified that R.P. promised him that he could have any sexual favor he wanted if she did

1. A "booty call" is defined as "[a] call to arrange a sexual rendezvous." *A Dictionary of Slang* at *http://www.pee-* *vish.co.uk/slang/b.htm* (last visited July 22, 2003).

not call him back within five minutes. Koenig testified that it was R.P.'s idea to give a sexual favor because he "kept telling her" that he did not think she would call him back. R.P. called back about 20 minutes later.

Koenig stated that R.P. indicated she wanted to meet him and suggested a location for the meeting. They arranged to meet later that same night. Koenig called R.P. when he was leaving work sometime after 1:00 a.m. so she could be ready. He called again at approximately 2:00 a.m. when he arrived at the meeting place, a local gas station. After waiting 15 minutes and thinking that R.P. and J.L. had decided not to meet, Koenig called a third time. R.P. and J.L. responded to this call by indicating to Koenig that they still planned to meet him. Koenig subsequently testified that he was in a hurry because he did not want his wife to question why he had not come home after work.

Shortly thereafter, R.P. and J.L. arrived at the gas station and got into Koenig's car. Koenig then drove around, looking for a hotel that had a vacancy. At each hotel, he would leave R.P. and J.L. in the car while he inquired about a room. R.P. told the police that Koenig made them wait in the car. Koenig found a vacant room at the third hotel they visited and registered for a room under a pseudonym. R.P. told the police that Koenig made her and J.L. walk into the hotel separately because he did not want them to be seen together because they looked so young. Nevertheless, Koenig stated that, even upon seeing R.P. and J.L. in the light of the hotel room, he believed that they were 18 and 19 years of age.

After entering the hotel room, J.L. went into the bathroom and stayed there because she did not want to participate in any sexual activity. Koenig then asked R.P. if he could have the sexual favor she had promised and he testified that she responded by saying, "No problem." The sexual favor he requested was for R.P. to perform oral sex while she was restrained by his handcuffs. R.P. complied with the request. Koenig and R.P. also engaged in anal sex. R.P. then told J.L. she could come out of the bathroom because they were finished. After J.L. came out of the bathroom, Koenig turned on a pornographic movie for the three of them to watch. During the movie, Koenig and R.P. had oral and vaginal sex while J.L. remained in the room.

As to these events, R.P. told the investigating officer that she felt forced into having sex with Koenig, felt scared, thought that Koenig was a creep and too old, and was afraid that if she did not do what he wanted, he would hurt her or J.L. J.L. initially told the police that she and R.P. went to the hotel willingly with Koenig and were not forced. However, in a later interview with an investigating officer and an Assistant Hennepin County Attorney, J.L. said that R.P. pressured her into accompanying her to the meeting with Koenig, that J.L. was scared, and that R.P. told J.L. that she was scared. J.L. also said that while she and R.P. were waiting in the car at one of the hotels, they discussed leaving before Koenig returned from the hotel, but he returned before they could leave. J.L. added that after the events in the hotel room, she wanted to run away and return to her home because she was uncomfortable and afraid. Nevertheless, she did not run away and Koenig drove both R.P. and J.L. home.

The encounter between Koenig, R.P., and J.L. came to light because of a subsequent report of a sexual assault of R.P. by one or more other males which occurred a few hours after R.P.'s meeting with Koenig. Following this assault, R.P. was taken to a medical center for a sexual assault

examination. The nurse examining R.P. stated that R.P. told her that she had sexual intercourse with two other males before being raped by the men who had been arrested. Later that same day, an investigating officer interviewed R.P. about the sexual assault.

During the interview with R.P., the investigator inquired about the two other males with whom she had sexual intercourse earlier that morning. R.P. was only able to identify Koenig by his first name, but she gave the investigator Koenig's cellular telephone number, through which the police tracked him down. When contacted, Koenig agreed to be interviewed. When interviewing Koenig on July 27, 2001, the police verified R.P.'s story about her meeting with him to engage in sexual activity. Koenig emphasized that the encounter was consensual, and vigorously denied that he knew R.P. and J.L.'s actual ages. Koenig also stated in the interview that R.P. left him a message the next day indicating that she wanted to meet again. Koenig said he called her back and lied about being out of town because he was feeling guilty about cheating on his wife. However, Koenig said that a few days later, on June 14, he attempted to reach R.P. again to have another sexual encounter, but was unable to reach her.

A criminal complaint was filed against Koenig on August 27, 2001, charging him with: (1) third-degree criminal sexual conduct for having sex with a minor (Minn. Stat. § 609.344, subd. 1(b) (2002)), a felony for which the penalty is imprisonment for not more than 15 years and/or payment of a fine of not more than $30,000 (Minn.Stat. § 609.344, subd. 2 (2002)); (2) solicitation of a child to engage in sexual conduct (Minn.Stat. § 609.352, subd. 2), a felony for which the penalty is imprisonment for not more than three years and/or payment of a fine of not more than $5,000 (Minn. Stat. § 609.352, subd. 2); and (3) fifth-degree criminal sexual conduct for engaging in sexual activity in the presence of a minor (Minn.Stat. § 609.3451, subd. 1(2) (2002)), a gross misdemeanor for which the penalty is imprisonment for not more than one year and/or payment of a fine of not more than $3,000 (Minn.Stat. § 609.3451, subd. 2). Koenig may present an affirmative defense to the sex-with-a-minor charge by showing by a preponderance of evidence that he believed R.P. was over the age of 16. Minn.Stat. § 609.344, subd. 1(b).

In December 2001, Koenig filed a motion to dismiss all three counts for lack of probable cause. A *Florence* hearing was held to determine whether there was sufficient probable cause to support the charges.[2] The investigating officer and Koenig provided testimony at the hearing. Koenig described his contacts and meeting with R.P. and J.L. There was also extensive testimony as to Koenig's knowledge of the girls' ages. Koenig testified that the dateline service states that callers have to be 18 years old to use the service. He testified that R.P. told him that she was 18 and that J.L. was 19. However, Koenig testified that during one of their telephone conversations, R.P. asked, "Well, how old, how young would I have to be for you not to mess with me?" Koenig replied by asking, "Well, you're over 16, right?" R.P. responded that she was 17, almost 18.

The state questioned Koenig regarding his employment at a high school where the

---

**2.** Minn. R.Crim. P. 11.03 provides that the court shall hear a defendant's motion for dismissal of the complaint against him for lack of probable cause that he committed the offense charged. This type of hearing has come to be called a *Florence* hearing based on the case of *State v. Florence,* 306 Minn. 442, 239 N.W.2d 892 (1976).

student age range is 14 to 18, and had him testify that he has children, the oldest being a 12–year–old boy. The investigating officer testified that he was struck by how young R.P. looked when he first saw her and that he estimated her age to be between 13 and 15. However, Koenig testified that he assumed R.P. was old enough to consent because of her knowledge, explicit language, and sexual history. He testified that R.P.'s figure comported with someone of 18 years of age. He stated that she was "heavier set," "very well-developed on her chest," and had "full lips." He testified that R.P. was approximately 5'5" and assumed she was short because of her ethnicity. He stated that she was dressed provocatively and wearing heavy makeup. Koenig also testified that, when told by the police that R.P. was 13, he thought he was going to die, became flushed, and saw black spots because he did not know she was that young.

In an order issued in February 2002, the district court denied the motion to dismiss the charge of third-degree sexual conduct with a minor because the court concluded there were fact issues regarding Koenig's affirmative defense of mistake as to R.P.'s age. Koenig had presented an affirmative defense to this count, attempting to show by a preponderance of evidence that he believed R.P. was over the age of 16. Minn.Stat. § 609.344, subd. 1(b). The motion to dismiss the fifth-degree count for lack of probable cause was granted. That dismissal was not contested further.

The district court also dismissed the solicitation charge for lack of probable cause. The court concluded that Koenig intended to engage in sexual conduct, but no evidence supported a finding of solicitation. The court stated that, because "R.P. initiated contact with the defendant by posting a voice message on a telephone dating service and participating in numerous, lengthy conversations with defendant, there is no evidence of solicitation." The court concluded that the conversations were mutual, that there were multiple voice-mail messages by each party, that the content of the conversations focused heavily on sex, that both parties were willing to speak with each other and arrange to meet, and that the purpose of the meeting was to engage in sexual activity.

The state appealed, and the court of appeals affirmed. *State v. Koenig*, 649 N.W.2d 484, 488 (Minn.App.2002). The court of appeals characterized the sequence of voice-mail messages and later telephone conversations as a "process of negotiation" instead of solicitation. *Id.* The court agreed with the district court's finding that R.P. initiated contact by being the first to post a message and concluded that the

> message unmistakably suggested a willingness to engage in sexual activity. R.P. did not exhibit any reluctance to discuss engaging in sexual activity, and her receptive attitude left no room for the "commanding, entreating, or attempting to persuade" that the statute prohibits.

*Id.* The court of appeals concluded that solicitation cannot occur when "the child's own words or conduct lead so directly to the sexual activity that the adult does not engage in any form of persuasion." *Id.* The court further concluded that in creating this statute, the legislature's intent was to "prohibit any persuasive conduct by adults that might entice children to engage in sexual activity." *Id.*

The state petitioned for review, which we granted. On appeal, the state asserts that the district court erred when it dismissed the solicitation charge on the ground that sufficient probable cause did not exist to conclude that Koenig solicited R.P. to engage in sexual conduct.

■ The only issue before us in this case is whether Koenig's behavior constituted sufficient solicitation to support probable cause under the child solicitation statute. "[T]he test of probable cause is whether the evidence worthy of consideration * * * brings the charge against the prisoner within reasonable probability." *Florence*, 306 Minn. at 446, 239 N.W.2d at 896 (emphasis omitted) (quoting *State ex rel. Hastings v. Bailey*, 263 Minn. 261, 266, 116 N.W.2d 548, 551 (1962)). The purpose of a probable cause hearing is to "protect a defendant unjustly or improperly charged from being compelled to stand trial." *Id.* at 454, 239 N.W.2d at 900. We have held that "the production of exonerating evidence by a defendant at the probable cause hearing does not justify the dismissal of the charges if the record establishes that the prosecutor possesses substantial evidence that will be admissible at trial and that would justify denial of a motion for a directed verdict of acquittal." *State v. Rud*, 359 N.W.2d 573, 579 (Minn.1984). The purpose of a probable cause hearing can be accomplished "without requiring the prosecutor to call any witnesses." *Id.* On appeal, we will accept the district court's findings of fact unless clearly erroneous. *State v. Colvin*, 645 N.W.2d 449, 453 (Minn.2002).

This is the first case we have reviewed under the child solicitation statute, which was enacted in 1986. Act of March 25, 1986, ch. 445, § 3, 1986 Minn. Laws 778, 779. This statute criminalizes the solicitation of children to engage in sexual conduct and reads as follows:

Subdivision 1. **Definitions.** As used in this section:

(a) "child" means a person 15 years of age or younger;

(b) "sexual conduct" means sexual contact of the individual's primary genital area, sexual penetration as defined in section 609.341, or sexual performance as defined in section 617.246; and

(c) "solicit" means commanding, entreating, or attempting to persuade a specific person in person, by telephone, by letter, or by computerized or other electronic means.

Subd. 2. **Prohibited act.** A person 18 years of age or older who solicits a child or someone the person reasonably believes is a child to engage in sexual conduct with intent to engage in sexual conduct is guilty of a felony and may be sentenced to imprisonment for not more than three years, or to payment of a fine of not more than $5,000, or both.

Subd. 3. **Defenses.** Mistake as to age is not a defense to a prosecution under this section.

Minn.Stat. § 609.352 (2002). Subdivision 1(c) was amended in 2000 to include the words "in person, by telephone, by letter, or by computerized or other electronic means." Act of April 3, 2000, ch. 311, § 3, 2000 Minn. Laws 189, 211–12.

■ We review de novo the construction of a criminal statute. *Colvin*, 645 N.W.2d at 452. The object of statutory interpretation is to effectuate the intent of the legislature. Minn.Stat. § 645.16 (2002); *Chapman v. Comm'r of Revenue*, 651 N.W.2d 825, 831 (Minn.2002). The rules of statutory construction require that a statute's words and phrases are to be given their plain and ordinary meaning. Minn.Stat. § 645.16; *Hince v. O'Keefe*, 632 N.W.2d 577, 582 (Minn.2001). When the language of the statute is ambiguous, the intent of the legislature controls. Minn. Stat. § 645.16; *Colvin*, 645 N.W.2d at 452. When reviewing a statute, we assume that the legislature does not intend to violate the United States and Minnesota Constitutions or intend absurd or unreasonable results. Minn.Stat. § 645.17 (2002); *Chapman*, 651 N.W.2d at 831. Penal statutes

are to be construed strictly so that all reasonable doubt concerning legislative intent is resolved in favor of the defendant. *Colvin,* 645 N.W.2d at 452. However, strict construction does not require that we assign the narrowest possible interpretation to the statute. *State v. Zacher,* 504 N.W.2d 468, 473 (Minn.1993).

Here, under a plain meaning analysis, we must examine the definition given by the statute for the term solicitation. "Solicit" is defined as "commanding, entreating, or attempting to persuade a specific person." Minn.Stat. § 609.352, subd. 1(c) (2002). The dictionary definition of "solicit" is "[t]o seek to obtain by persuasion, entreaty, or formal application." The American Heritage Dictionary 1163 (2d College ed.1982). While we do not rely on this definition of solicit because the statute provides a definition, we note that the statute's definition appears to be in accord with the general understanding of the word "solicit." "Entreat" is defined as "[t]o make an earnest request of." *Id.* at 457. "Earnest" is defined as "[m]arked by or showing deep sincerity or seriousness." *Id.* at 434. Regarding an attempt to persuade, an "attempt" is defined as "[a]n effort or try." *Id.* at 139.[3] "Persuade" means "[t]o cause (someone) to do something by means of argument, reasoning, or entreaty." *Id.* at 926. "Command" means "[t]o direct with authority; give orders to." *Id.* at 296. The statute requires that the acts of commanding, entreating, or attempting to persuade be directed at a spe-

cific person. Minn.Stat. § 609.352, subd. 1(c).

The lower courts focused on the fact that R.P. had posted a voice-mail message on the dateline service indicating her interest in sexual activity. We first note that R.P.'s posting was a general and open invitation; it was not directed to any specific person. But, more importantly, her conduct as the minor is not controlling. Koenig initiated contact by sending a voice message to R.P. After listening to R.P.'s general posting, Koenig contacted R.P., indicated that he was interested in her offer, and that he enjoyed sex. While the court of appeals characterized the series of voice-mail messages and later telephone conversations as a form of negotiation and not solicitation, based on the number of calls and the nature of the conversations, these contacts can reasonably be considered attempts by Koenig to persuade R.P. to engage in sexual activity with him.

It is significant that during one of the telephone conversations, R.P. asked Koenig what age would be too young. R.P. asked this question after having earlier told Koenig that she was 18 years old. Instead of pausing at this signal and proceeding cautiously, Koenig said, "Well, you're over 16, right?" This rejoinder could be read as an indication to R.P. that the correct answer was over 16. Further, at one point when R.P. decided to take another telephone call, albeit what she termed to be a "booty call," Koenig, convinced that R.P. would not call him back,

---

**3.** In the context of attempt crimes, we have interpreted the statutory definition of attempt, Minn.Stat. § 610.27, repealed 1963, ("[a]n act done with intent to commit a crime and tending, but failing, to accomplish it"), as requiring "more than the mere solicitation of another to commit." *State v. Lowrie,* 237 Minn. 240, 242–43, 54 N.W.2d 265, 266 (1952). "[M]ere acts of preparation remote from the time and place of the intended crime, unac-

companied by other overt acts performed pursuant to the attempt, are insufficient to constitute such an attempt." *Id.* at 243, 54 N.W.2d at 266–67. However, the legislature considered this case law definition in concluding that additional legislation was needed to address the problem of child solicitation. Hearing on S.F. 1592, S. Judiciary Comm., 74th Minn. Leg., February 7, 1986 (audio tape) (comments of Sen. Reichgott).

testified that he "kept telling her" that he did not believe that she was going to call him back. In other words, it is reasonable to conclude that Koenig was attempting to persuade R.P. not to terminate the conversation in hopes that it would lead to sexual activity. In fact, R.P. did promise Koenig a sexual favor if she did not call him back within five minutes.

Credible evidence of a process of persuasion continued when Koenig arranged to pick up R.P. and J.L. Unquestionably, Koenig's ultimate goal was to engage in sexual activity with R.P. Moreover, upon leaving work to meet with R.P. and J.L., Koenig called to let them know he was coming and called again when he arrived at the agreed upon meeting place, and then called yet again to make sure that they were going to meet him. Koenig drove to multiple hotels in search of a room, something that, as minors, R.P. and J.L. could not do by themselves. He then arranged for a room when he found a hotel with a vacancy. Finally, R.P. stated that when Koenig located a hotel room, he had R.P. and J.L. walk in separately because they looked so young. Nevertheless, when asked at the *Florence* hearing what age Koenig thought the children were after seeing them in the light of the hotel room, he replied he believed them to be the ages they had told him, 18 and 19. Once in the hotel room, Koenig made a serious request to engage in sexual activity when he asked R.P. for the sexual favor that she had promised. This favor was engaging in oral sex while R.P. was restrained by his handcuffs. Koenig next engaged in anal sex

with R.P., after which he turned on a pornographic movie, which was then followed by further sexual activity with R.P.

The common meaning of entreat requires an element of seriousness in the request. Given that the conversations were explicit as to their sexual nature, it is a reasonable conclusion that Koenig was serious about pursuing sexual activity with R.P. His attempts to prevent R.P. from ending the telephone conversation and to keep her interested are indications of his earnest intention and resolve to pursue sexual activities with her. Koenig also testified that he was under a time constraint because he was married and needed to find somebody within a short period of time who was serious about engaging in sexual activities. This scenario encompasses sufficient aspects of entreatment and attempts to persuade to support the charge under the statute within reasonable probability. There is substantial evidence admissible at trial and not inherently incredible which would be adequate to withstand a motion for directed verdict of acquittal. *See Rud*, 359 N.W.2d at 579. Therefore, we conclude there was sufficient probable cause to charge Koenig with entreating and attempting to persuade R.P. to engage in sexual activity in violation of Minn.Stat. § 609.352, subd. 1(c).[4]

Because we conclude that the statute's definition of solicitation is plain, an analysis of the legislature's intent is unnecessary to support our conclusion that there was sufficient probable cause to charge Koenig. However, given the dissent's narrow interpretation of the statutory defini-

---

**4.** The dissent criticizes the court's interpretation of the evidence. In response, we emphasize that the proper focus here is not on whether Koenig was guilty or innocent of the charges filed against him, but whether there was sufficient probable cause to move the case forward. In its unfalteringly narrow view of Koenig's conduct, the dissent appears to lose sight of the narrow issue which is before us. Further, the focus here is on Koenig's conduct and not that of the child. In its narrow review of the facts and its conclusion as to their meaning, the dissent conveniently ignores too much that transpired between Koenig and the child.

tion of solicitation, we will review the statute's legislative history. Such a review supports our interpretation of the statute.

Legislative research indicates that Representative David Bishop, the House author of the bill, wished to criminalize the mere request for sexual activity so long as the request was accompanied by a sincere intent to engage in sexual activity. *See* Hearing on H.F. 1835, H. Comm. Fam. and Crim. L., 74th Minn. Leg., February 19, 1986 (audio tape) (comments of Rep. Bishop). The legislature added the "intent to engage in sexual conduct" language as part of the prohibited act in order to increase the state's burden of proof. *Id.* Requiring the state to show intent was added to eliminate the potential that joking or frivolous offers would be subject to prosecution. *Id.* The intent element makes solicitation an act rather than speech, i.e., the act of attempting to persuade a child to engage in sexual activity. *See* Senate debate on S.F. 1592, 74th Minn. Leg., March 17, 1986 (audio tape) (comments of Sen. Reichgott, sponsor of Senate bill). To further secure against First Amendment violations, the legislature required the state to show that the defendant was soliciting "a specific person." Hearing on H.F. 1835, H. Comm. Fam. and Crim. L., 74th Minn. Leg., February 19, 1986 (audio tape) (comments of Rep. Bishop). Representative Bishop noted that with the addition of this language, a rock musician singing a song including solicitous words could not be prosecuted. *Id.* These comments indicate that the focus of the bill was on criminalizing conduct and not speech.

The legislature appears to have concluded that there was a need to criminalize the act of child solicitation because solicitation often leads to abuse, prostitution, and kidnapping, which are commonly associated with sexual conduct. Hearing on S.F. 1592, S. Judiciary Comm., 74th Minn. Leg., February 7, 1986 (audio tape) (comments of Sen. Reichgott). The legislature saw a need to protect vulnerable children, particularly runaways and truants. Senate debate on S.F. 1592, 74th Minn. Leg., March 17, 1986 (audio tape) (comments of Sen. Reichgott). Senator Bergland noted that solicitation was a widespread problem in various districts. *Id.* After debating whether to make solicitation a gross misdemeanor as opposed to a felony, the legislature voted in favor of making it a felony because of the need for a greater deterrent effect due to the potential harm to children. *Id.*

When considering whether to eliminate mistake of age as a defense to the charge of solicitation, the Senate Judiciary Committee, to which the bill was referred, received testimony from Olmsted County Attorney Raymond F. Schmitz. Hearing on S.F. 1592, S. Judiciary Comm., 74th Minn. Leg., February 7, 1986 (audio tape). Schmitz reported that he had had difficulty prosecuting a defendant who approached 11– and 12–year–old boys and made an offer for sex because there was no penalty under the law for this type of behavior. *Id.* Schmitz argued that even if a victim lies about his or her age, an adult should not be allowed to hide behind the fact that the victim indicated he or she was 17 or 18 or older because the subject at issue concerns criminal activity against children. *Id.* Schmitz also argued to the legislature that if a person is planning to engage in sexual activities with someone in a youthful age range, that person takes the risk of criminal sanctions if he or she does not take the trouble to satisfactorily verify the solicited person's age. *Id.*

For all of the foregoing reasons, we conclude that there is sufficient credible evidence of probable cause to support the charge against Koenig for the solicitation

of a child for sexual activity. We hold that the district court erred when it dismissed this charge against Koenig and therefore we reverse the decision of that court and the affirmance of the decision by the court of appeals. We remand to the district court for further proceedings consistent with this opinion.

Reversed and remanded.

BLATZ, C.J., took no part in the consideration or decision of this case.

PAGE, Justice (dissenting).

I respectfully dissent. While the facts of this case are disturbing and sordid, I, unlike the court, cannot allow myself to be swept away by them in order to ignore the clear language of the statute to reach the conclusion that there is probable cause sufficient to charge Koenig with solicitation of a child to engage in sexual conduct under Minn.Stat. § 609.352 (2002). As the court has noted above, the purpose of a *Florence* hearing is to determine whether there are sufficient grounds to establish probable cause to believe that the defendant is guilty of a charged offense, not to decide his guilt in the matter. *See State v. Schwartz*, 266 Minn. 104, 108, 122 N.W.2d 769, 772 (1963). To satisfy this burden, the state must establish probable cause for each element of the charged offense. Thus, in this case, the state's failure to establish probable cause as to each element under Minn.Stat. § 609.352, subd. 2 (2002), means that Koenig's actions, while despicable, are not criminal.

We have long held that "[e]very law shall be construed, if possible, to give effect to all its provisions." Minn.Stat. § 645.16 (2002); *State v. Larivee*, 656 N.W.2d 226, 229 (Minn.2003). To sustain

Koenig's charge of solicitation of a child to engage in sexual conduct, there must be evidence to establish that (1) he "solicit[ed] a child * * * to engage in sexual conduct" and (2) that he had the "intent to engage in sexual conduct." The statute defines the first required element for a violation of section 609.352, "solicit," as "commanding, entreating, or attempting to persuade a specific person in person, by telephone, by letter, or by computerized or other electronic means." Minn.Stat. § 609.352, subd. 1 (2002).[1] Because the statute does not provide a special definition for "commanding," "entreating," or "attempting to persuade," these words must be read "according to their common and approved usage." Minn.Stat. § 645.08 (2002). In the Random House Webster's Unabridged Dictionary (2d. ed.2001), "command" is defined as "to direct with specific authority or prerogative; order"; "entreat" is defined as "to ask (a person) earnestly; beseech; implore; beg"; and "persuade" is defined as "to prevail on (a person) to do something, as by advising or urging." *Id.* at 410, 649, 1446. Implicit in the statute's use of each of these words is a requirement that the accused take some affirmative step to pressure a child to engage in sexual conduct. There is no evidence in this record that Koenig directed with specific authority, asked earnestly, beseeched, implored, begged, sought to prevail upon, or pressured R.P. in any way to engage in sexual conduct. Therefore, there is no evidence that Koenig, as required to support a charge under the statute, took any action to command, entreat, or attempt to persuade R.P. to engage in sexual conduct. Without any evidence with respect to this first element of the crime, the state has failed to meet its burden under *Florence*

---

**1.** Mistake as to age is not a defense to such a charge. Minn.Stat. § 609.352, subd. 3

(2002).

because without such evidence it cannot establish probable cause to believe that Koenig violated Minn.Stat. § 609.352, subd. 2.

The court attempts to avoid the statute's requirements by relying on facts that shed no light on whether Koenig commanded, entreated, or attempted to persuade R.P. to engage in sexual conduct. For the court, it is enough that the facts suggest that he intended, if possible, to engage in sexual conduct with R.P. the evening in question and that he likely knew or should have known that R.P. was younger than 15 years of age. However, each of the incidents relied on by the court merely support the conclusion that Koenig desired to engage in sexual conduct that evening and he likely knew or should have known that R.P. was younger than 15 years of age.

The court begins its analysis relying on R.P.'s question regarding what age was too young for Koenig to engage in sexual conduct and his response of, "Well you're over 16 right?" The court found this to be "significant" evidence of Koenig's attempt to persuade R.P. to engage in sexual conduct. However, this question and its response go to whether Koenig knew that R.P. was a child under the age of 15, a fact that has no relevance to the solicitation charge. Nothing about either the question or response say anything either implicitly or explicitly about whether Koenig commanded, entreated, or attempted to persuade R.P. to do anything.

The court also relies on Koenig's discussion with R.P. regarding whether she would call him back after taking another call, including what it describes as Koenig's "attempt[] to persuade" R.P. to call him back, and R.P.'s eventual promise that if she did not call him back within five minutes he could have a sexual favor. The court concludes from this discussion that Koenig's "earnest" attempts to persuade

R.P to continue talking to him are the equivalent of an attempt by Koenig to persuade R.P. to engage in sexual conduct. However, the statute requires a showing that the accused attempted to persuade the child *to engage in sexual conduct*, not that the accused attempted to persuade the child to continue a sexually explicit conversation. Thus, Koenig's efforts to keep R.P. on the telephone do not provide probable cause to believe that he solicited R.P. to engage in sexual conduct.

Similarly, the court relies on the evidence that Koenig called R.P. when she did not immediately show up at the designated meeting place; picked up R.P and J.L; drove to several hotels, which R.P. and J.L could not have done on their own; arranged for a room; and asked about the sexual favor that R.P. had promised him earlier in the evening as further evidence of the process of persuasion. Each of these pieces of evidence provides support for the proposition that Koenig *intended* to engage in sexual conduct with R.P., but they do not provide probable cause to believe that Koenig commanded, entreated, or attempted to persuade R.P. to engage in sexual conduct. Nor do any of Koenig's words or acts related to that evidence support probable cause.

Rather, the record establishes that R.P. willingly left a sexually explicit message on the hotline; responded to Koenig's sexually explicit postings in response to her initial posting; gave him her direct number so he could call her at home; engaged in sexually explicit phone conversations with Koenig; before interrupting one of these conversations to take another phone call, promised him a sexual favor if she did not call back within five minutes; called him back approximately 20 minutes later; met him at a gas station; got into his car; went with him to several hotels as he tried to find a room; once a room was found,

went to it with him; and engaged in sexual conduct with him.

As indicated, there is no evidence of solicitation unless one reads the statute and the record, as the court does here, and concludes that a defendant may be charged with a violation of Minn.Stat. § 609.352 solely on the basis that the accused had a sexually explicit conversation with a child with intent to engage in sexual conduct. This reading collapses the two required elements of the statute into one and fails to give effect to the part of the statute that requires the defendant to "solicit" the child. Indeed, the court's interpretation of the statute is so broad that I cannot imagine any sexually explicit conversation between an individual 18 years or older and a child under the age of 16 that would not be punishable under Minn. Stat. § 609.352, subd. 2. Because we have long held that "[e]very law shall be construed, if possible, to give effect to all its provisions," Minn.Stat. § 645.16, I cannot but conclude, based on the language of the statute, that there needs to be more than just proof of a sexually explicit conversation between the accused and a child to establish probable cause to believe that the accused solicited the child to engage in sexual conduct.

While agreeing to and then engaging in sexual conduct with a child is despicable and may subject the accused to a criminal sexual conduct charge, that alone does not satisfy the requirements for bringing a charge under section 609.352, subdivision 2. In its efforts to avoid placing blame on R.P., the court has completely taken Koenig's actions out of context and placed them into a vacuum from which it then reviews the record and applies the law. This skews the lens through which we must look to find evidence of solicitation. More properly, the accused's conduct must be viewed in context with the child's be-

havior to determine whether or not solicitation has indeed occurred. Doing so does not equate to or require blaming the child. Nor does it use the child's conduct to justify the defendant's actions. Rather, it merely places Koenig's conduct in the proper context to determine whether or not probable cause exists as to each element of section 609.352, subdivision 2.

This raises the question: Can a willing child be solicited under Minn.Stat. § 609.352. The answer of course is yes, but only if the accused *commands, entreats, or attempts to persuade* the child to engage in sexual conduct with the intent to engage in sexual conduct. If there was any evidence showing that R.P. did not want to engage in any of the conversations with Koenig, did not want to meet Koenig, or expressed that she was unwilling to engage in sexual conduct with Koenig, after which Koenig commanded, entreated, or attempted to persuade her to do otherwise, then the first element required for a solicitation charge would be satisfied. However, if the child acts voluntarily, as R.P. did in this case, and the accused does not need to and therefore does not command, entreat, or attempt to persuade the child to do anything, as the record here indicates, there can be no solicitation. Although Koenig's conduct is abhorrent, I cannot in good conscience read out of the statute, as the court does, the requirement that the defendant take some action, however minimal, that constitutes commanding, entreating, or attempting to persuade the child to engage in sexual conduct. Nor can I read the record, as the court does, to justify its result. Therefore, I would affirm the dismissal of the solicitation charge for lack of probable cause.

Finally, I do not understand the court's review of legislative history given its holding that Koenig's actions fit within the "plain meaning" of the statute. We have

stated over and over again that "[w]hen the words of the law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16. Here, the statutory definition of "solicit" is unambiguous. The only possible reason for the court to engage in an examination of legislative history is in an effort to bring its expansive reading of the facts within its expansive reading of the statute's "plain meaning." Doing so violates our rules of statutory construction. If Minn.Stat. § 609.352, subd. 2, is ambiguous and requires the court to resort to consideration of legislative history in order to give its provisions meaning, we are required to "resolve ambiguity concerning the ambit of the statute in favor of lenity" towards the defendant. *State v. Stevenson*, 656 N.W.2d 235, 239 (Minn.2003). Here, that would require that the district court and the court of appeals be affirmed. Either section 609.352, subdivision 2, is ambiguous or it is not. The court cannot have it both ways.