STATE of Minnesota, Respondent,

v.

Kim Douglass BARSNESS, Appellant.

No. A10–1001.

Court of Appeals of Minnesota.

April 12, 2011.

---

Lori Swanson, Attorney General, St. Paul, MN; and Timothy R. Faver, Beltra-

mi County Attorney, Randall R. Burg, Assistant County Attorney, Bemidji, MN, for respondent.

Mark D. Nyvold, St. Paul, MN, for appellant.

Considered and decided by MINGE, Presiding Judge; KLAPHAKE, Judge; and LARKIN, Judge.

## OPINION

LARKIN, Judge.

Appellant challenges his conviction of attempting to sell protected wild animals in violation of the game and fish laws under Minn.Stat. § 97A.325, subd. 1(a), arguing that his use of equipment tagged for infested-waters-only use to harvest minnows in non-infested waters is not a crime. Because the legislature has not made this conduct a crime, we reverse appellant's conviction without addressing his other claims of error.

## FACTS

This criminal case relates to the legislature's attempt to curtail the spread of invasive species in Minnesota waters. *See* Minn.Stat. § 84D.02, subd. 1 (2008) (stating, "[t]he commissioner shall establish a statewide program to prevent and curb the spread of invasive species of aquatic plants and wild animals"). The complaint explains the invasive species at issue here and the legislature's attempt to halt its spread.

> The spiny water flea (Bythotrephes cederstroemi) is an exotic species of crustacean which has invaded certain lakes and rivers in the State of Minnesota. The animal is about one inch long. It feeds primarily on zooplankton. It competes for those small organisms with small perch and other panfish. Those fish are unable to consume the spiny

water flea due to its barbed spine, which comprises seventy percent of its body length. The spine becomes lodged in the gullet of smaller fish.

The small fish which can neither consume the spiny water flea nor successfully compete with the spiny water flea for zooplankton are the staple diet of members of many larger game fish species, such as walleye and Northern pike. As the number of smaller fish in the "food chain" decline due to the proliferation of the spiny water flea, the population of larger game fish can, in turn, decline precipitously, resulting in the destruction of important game fisheries.

The spiny water flea has infested the Rainy Lake/Rainy River watershed along Minnesota's border with Canada. Those border waters are heavily-fished by anglers using "live bait" such as "shiners"—a type of minnow. Shiners are netted or trapped and then sold by commercial bait dealers licensed by the State of Minnesota.

To halt the spread of the spiny water flea to other lakes, rivers, and watersheds, the State of Minnesota has instituted a number of specific requirements related to the licensure of commercial bait harvesters on infested waters, such as the Rainy River near Baudette, Minnesota. Such dealers must take a written examination to prove that they are knowledgeable regarding the danger posed by the spiny water flea. Only after passing that examination may such license holders receive the special permit required to take minnows in infested waters.

Appellant Kim Douglass Barsness had a permit allowing him to harvest minnows in infested waters. The permit states: "All equipment must be tagged with orange tags provided by the DNR that says, 'INF [ (infested) ] WTR [ (waters) ] ONLY.' " On May 6, 2009, Department of Natural Resources (DNR) conservation officer Robert Gorecki was sent to investigate a report that Barsness and John Hult were using infested-waters-only equipment to harvest minnows in Upper Red Lake, which is a non-infested body of water.

Officer Gorecki arrived and discovered Barsness and Hult harvesting minnows. Officer Gorecki informed Barsness and Hult that a tipster had reported that they might be using infested-waters-only equipment in non-infested waters. They denied the allegation. But Officer Gorecki remained concerned because he "noticed a infested-waters-only tag on one of the 5–gallon buckets in [Hult's] pickup truck." Hult and Barsness eventually admitted that some of their equipment had been used in infested waters. Believing that Barsness and Hult had used infested-waters-only equipment in non-infested waters, and that this conduct was in violation of law, Gorecki seized the equipment.

The Beltrami County Attorney criminally charged Barsness and Hult, in separate complaints, under Minn.Stat. § 97A.325, subd. 1(a), which provides in relevant part: "A person that buys or sells protected wild animals in violation of the game and fish laws where the sales total $300 or more is guilty of a gross misdemeanor." The complaint against Barsness charged one count of conspiracy to illegally sell wild animals and one count of attempted illegal sale of wild animals.[1] The complaint identified the "illegal" conduct as using equipment tagged for infested-waters-only use to harvest minnows in non-infested waters. The probable cause portion of the complaint describes the accusation as follows:

---

**1.** Minnows are protected wild animals. Minn.Stat. § 97A.015, subd. 39 (2008).

[T]he equipment used by commercial dealers to take minnows in infested waters ... must carry specially issued tags identifying it as for use in infested waters *only*. That equipment cannot also be used in uninfested waters. The object of these requirements is to prevent the spread of the spiny water flea or its eggs from infested waters to uninfested waters. Spiny water flea eggs can survive even after being dried out or eaten by fish.

. . . .

Hult and Barsness resolved to go to Upper Red Lake to trap minnows. They could have legally done so with equipment that had not previously been used in infested waters. Hult and Barsness, however, did not make the additional investment in equipment exclusively for use in infested waters. Instead, they took their contaminated equipment, which they had previously used in the infested waters of Rainy River, to Upper Red Lake to trap minnow for ultimate resale in Baudette.

Barsness moved to dismiss the complaint for lack of probable cause, asserting, in part, that the state had mischarged him. Barsness's supporting memorandum states, "There is no statutory criminal sanction for using infested equipment in non-infested waters." But the primary focus of Barsness's probable cause argument was the lack of evidence regarding a sale or attempted sale of minnows valued at over $300. The district court denied the motion in a written order, without addressing whether the charged conduct constitutes a crime.

Barsness's and Hult's cases were consolidated for trial. At trial, the state focused on the alleged use of infested-waters-only equipment in non-infested waters. The state called three DNR employees as witnesses, including Officer Gorecki. Officer Gorecki testified that the spiny-water flea is an invasive species; the DNR is charged with preventing its spread to non-infested waters; and to that end, infested-waters-only equipment cannot be used in non-infested waters. The district court admitted into evidence a photo of a bucket that Officer Gorecki had seized from Hult bearing an infested-waters-only tag and a copy of a test on which Barsness responded "false" to the question "Nets and gear with tags issued by the DNR that say 'INFESTED WTR ONLY' allows a permittee to use the equipment in non-infested waters if they have been cleaned."

Consistent with the allegations in the complaint and the evidence presented at trial, the district court instructed the jury that:

[T]he defendants must have taken or attempted to take ... and possess minnows illegally. An animal is illegally taken if it is taken at a prohibited time, such as out of season, or in a—in a prohibited manner, such as with illegal equipment or devices. . . . In this case, you are instructed that using equipment tagged for use in infested waters only, in waters that are uninfested, is illegal.

And in closing argument, the prosecutor stated:

You can't clean gear that's been used in infested waters and then use it in uninfested waters. Using gear that has been used in infested waters in uninfested waters is to use an illegal means of taking fish. But here in this courtroom, the defense has tried to suggest to you that it is somehow okay to use infested gear in uninfested waters if the gear has been washed or frozen. The defendants know that wasn't permitted, but they brought infested gear to the shores of uninfested Upper Red anyway. They brought an illegal means of taking fish for use on uninfested waters.

The jury found Barsness guilty of attempting to illegally sell wild animals under section 97A.325, subdivision 1(a). This appeal follows, in which Barsness argues that the proved conduct does not constitute a crime.

## ISSUES

Does using equipment tagged for infested-waters-only use to harvest minnows in non-infested waters constitute a crime under Minn.Stat. § 97A.325, subd. 1(a)?

## ANALYSIS

■ Barsness argues that because using equipment tagged for infested-waters-only use to harvest minnows in non-infested waters does not violate a game and fish law, his conduct was not illegal and his conviction must be vacated. Barsness frames his argument as a challenge to the district court's subject-matter jurisdiction. We disagree that the issue presented is one of subject-matter-jurisdiction. See In re Civil Commitment of Giem, 742 N.W.2d 422, 427 n. 6 (Minn.2007) ("[T]he label "jurisdictional" [should be used] ... only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." (alterations in original) (quotations omitted)). The district court has subject-matter jurisdiction to hear criminal cases. See id. at 429 ("Our state constitution provides a broad grant of subject matter jurisdiction to the district court, providing that [t]he district court has original jurisdiction in all civil and criminal cases." (alteration in original) (quotation omitted)). And the complaint here charged a criminal offense. But whether the facts alleged and proved establish a violation of law under the charging statute is another issue altogether.

■ Barsness's claim involves application of statutes to undisputed facts. We therefore review the claim de novo. See State v. Kolla, 672 N.W.2d 1, 6 (Minn.App. 2003) ("The interpretation of statutes and their application to undisputed facts present questions of law, which we review de novo."). Statutory-construction rules "require that a statute's words and phrases are ... given their plain and ordinary meaning," and when the words of the statute are ambiguous, "the intent of the legislature controls." State v. Koenig, 666 N.W.2d 366, 372 (Minn.2003); Minn.Stat. §§ 645.08, 645.16 (2008). But "[p]enal statutes are to be construed strictly so that all reasonable doubt concerning legislative intent is resolved in favor of the defendant." Koenig, 666 N.W.2d at 372–73.

The state proved that Barsness used infested-waters-only equipment to harvest minnows in non-infested waters. But Barsness's conduct is not criminal under section 97A.325, subdivision 1(a), unless it violated the game and fish laws. See Minn.Stat. § 97A.325, subd. 1(a) (stating that buying or selling protected wild animals "in violation of the game and fish laws" is a gross-misdemeanor offense if the sales total $300 or more). We have reviewed the game and fish laws in Minn. Stat. §§ 97A.001–97C.871 (2008), the portions of Minn.Stat. §§ 84D.01–.15 (2008) referenced therein, and the corresponding administrative rules, and we find no statement that using infested-waters-only equipment to harvest minnows in non-infested waters is a crime.[2]

---

**2.** Although section 84D.03, subdivision 4, states that "[a]ll nets, [and] traps ... used for commercial fishing ... in an infested water that is designated because it contains invasive [species] may not be used in any other waters," this provision is inapplicable because minnow harvesting is not "commercial fishing." See Minn.Stat. § 97A.015, subd. 9 (de-

The state does not cite any provision of the game and fish laws that explicitly provides that Barsness's conduct is illegal. Instead, the state argues that Barsness violated the general prohibition against netting under Minn.Stat. § 97C.325(a)(3), which provides, "[e]xcept as specifically authorized, a person may not take fish with ... nets, traps, trot lines, or snares." *See* Minn.Stat. § 97A.335, subd. 1 (providing that a person who takes fish with devices in violation of section 97C.325 is guilty of a gross misdemeanor). The state argues that because Barsness used infested-waters-only equipment in violation of his permit conditions,[3] the use was not "specifically authorized" and therefore was in violation of section 97C.325(a)(3). Barsness counters that the statutory prohibition on netting is inapplicable because section 97C.325(a)(3) applies to "fish" and minnows are not treated as fish under the game and fish laws.[4]

■ There is merit to Barsness's argument. The game and fish laws define fish and minnows separately. *See* Minn.Stat. § 97A.015, subd. 25 (defining "game fish"); *id.*, subd. 43 (2008) (defining "rough fish"); *id.*, subd. 46 (defining sunfish); *id.*, subd. 29 (defining "minnows"). Moreover, minnows and fish are separately regulated under the game and fish laws. *See* Minn. Stat. §§ 97A.015, subd. 9 (defining commercial fishing as "taking fish, except minnows, for sale"); .335 (providing that "a person that takes fish" with devices in

violation of section 97C.325 is guilty of a gross misdemeanor); 97C.301 (establishing licensing requirements for the taking of fish); .501 (establishing licensing requirements related to minnows); .505 (regulating the taking, possessing, buying, and selling of minnows); .511 (regarding minnow seines); .515 (regarding imported minnows); .525 (regulating transportation of minnows).

Although we appreciate the state's common-sense argument that "minnows are fish," we cannot ignore a statutory scheme that plainly and consistently distinguishes between fish and minnows. And even if we were to determine that the statutory scheme is subject to more than one reasonable interpretation regarding whether minnows are fish and that the scheme is therefore ambiguous, we would have to construe the ambiguity in Barsness's favor. *See State v. Peck,* 773 N.W.2d 768, 772 n. 4 (Minn.2009) ("The rule of lenity requires us to resolve any *ambiguity* concerning the ambit of criminal statutes in favor of lenity towards the defendant." (emphasis in original)); *Am. Family Ins. Grp. v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000) ("A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." (quotation omitted)); *State v. Walsh,* 43 Minn. 444, 445, 45 N.W. 721, 721 (Minn.1890) ("A statute is not to be deemed to make an act criminal, which would not have been so except for the statute, unless the intention

fining commercial fishing as "taking fish, except minnows, for sale").

3. We note that although Barsness's permit to harvest minnows in infested waters includes written conditions that "[n]ets and traps marked with tags (provided by the MN DNR) issued for the current year may be used in and for transporting to and from waters infested with spiny water flea that are listed on this permit," and that "[a]ll equipment must be tagged with orange tags provided by the

DNR that says, 'INF WTR ONLY,' " the enumerated conditions do not expressly prohibit the use of tagged equipment in non-infested waters.

4. Because Barsness's argument that minnows are not fish under the game and fish laws is dispositive, we do not address his other arguments regarding why section 97C.325(a)(3) is inapplicable.

of the legislature to effect that result is apparent, and not seriously doubtful[.]").

We recognize that preventing the spread of invasive species to non-infested Minnesota waters is a serious matter, and we are not insensitive to the larger environmental issue, but because minnows are not treated as fish under the plain language of the game and fish laws, Barsness's conduct is not illegal under sections 97C.325(a)(3) and 97A.335, subd. 1. And because the legislature has not otherwise stated that the proved conduct—using equipment tagged for infested-waters-only use to harvest minnows in non-infested waters—is a violation of the game and fish laws, Barsness's conviction under section 97A.325, subd. 1(a) cannot be sustained. *See State v. Adickes,* 741 N.W.2d 904, 907 (Minn. App.2007) (reversing conviction for driving in violation of a restricted license where it was not apparent from a plain reading of the relevant statute that the legislature intended for violators of continued-abstinence agreements to remain criminally liable for driving in violation of a restricted license even after their restricted licenses are cancelled).

## DECISION

The state charged Barsness with attempting to sell protected wild animals in violation of the game and fish laws under Minn.Stat. § 97A.325, subd. 1(a). But the charged conduct—using equipment tagged for infested-waters-only use to harvest minnows in non-infested waters—does not violate the plain language of the game and fish laws. Because the legislature has not clearly defined this conduct as a crime, we reverse Barsness's conviction without addressing his other claims of error.

**Reversed.**