ANDERSON, Justice
(dissenting).
Minnesota’s lockout statute applies only to the “actual or constructive removal or exclusion of a,residential tenant.” Minn. Stat. § 504B.375, subd. 1(a) (2014). The phrase “residential tenant” is defined as follows:
“Residential tenant” means a person who is occupying a dwelling in a residential building under a lease or contract, whether oral or written, that requires the payment of money or exchange of services, all other regular occupants of that dwelling unit, or a resident of a manufactured home park.
Minn.Stat. § 504B.001, subd. 12 (2014) (emphasis added).
The housing court, the district court, and the court of appeals all determined that, based on the plain and unambiguous meaning of the word “occupying” in section 504B.001, subdivision 12, a “residential tenant” is an individual who has actually taken possession of a residential dwelling under a lease or contract. Seé Cocchidrella v. Driggs, 870 N.W.2d 103, 106 (Minn.App.2015). Although Cocchiarella and Driggs allegedly had an oral lease agreement,[1] Cocchiarella never occupied the *629 leased dwelling, as she explicitly admitted before the housing court. She never gained actual possession by any means— she never obtained-a key, entered the dwelling, or deposited any of her belongings. Her only connection to the dwelling was the oral lease agreement. Under that agreement, she never even gained legal possession, as the agreement did not specify any lease terms — including, most importantly, the effective date of the lease agreement. Therefore, all three courts that have considered Cocchiarella’s claims have concluded that the lockout statute does not apply because' she never took actual possession of the residential dwelling.
But the court has now determined that the plain meaning of “occupying” under section 504B.001, subdivision 12, merely requires a “present legal right” to actual possession of the residential dwelling. Such “present legal possession,” under the court’s rule, may be established by the effective date of a lease agreement, even if a tenant never gained actual (or “physical”) possession. The court’s reading of the word “occupying” is not > reasonable. Rather, for the reasons expressed below, the plain and only reasonable meaning of the word “occupying,” as . used in section 504B.001, subdivision 12, requires a “residential tenant” to have actual, physical possession of the residential dwelling under a lease or contract. Therefore, the lockout statute is inapplicable to Cocchiar-ella, who never “occupied]” the dwelling that was allegedly subject to an oral lease agreement with Driggs. For these reasons, I respectfully dissent,
The first step in statutory interpretation is to determine whether, on its face, the statute is ambiguous. Am, Tower, L.P. v. City of Grant, 636 N.W.2d 309, 312 (Minn.2001). A statute is ámbiguous only when it is “subject to more than one reasonable interpretation.”. Id.' (citation omitted) (internal quotation marks omitted). If a statute is not ambiguous, we interpret the words of the statute according to their plain and ordinary meaning. See Minn. Stat. § 645.08(1) (2014) (requiring that statutory words be interpreted “according to their common and approved usage”); Hous & Redevelopment Auth. of Duluth v. Lee, 852 N.W.2d 683, 690 (Minn.2014).
I disagree with the court that the word “occupying” is a technical word subject to a variety of meanings depending on context because it has one reasonable plain meaning. As the other courts involved in this case have concluded, the common and ordinary meaning of “occupying” refers to actual, physical possession or residence, not merely a legal right to possession. This is shown by definitions from numerous, common dictionaries. E.g., Webster’s Third New International Dictionary Unabridged (3d ed.2002) (defining “occupy” as “to take up residence in:, settle in”; “to fill up (a place or extent) ... <the center of the house was occupied by a magnificent mahogany staircase>”; and “to hold possession of < occupied a ridge from which they dominated the crossroads >”); Mer-rianv-Webster’s Collegiate Dictionary (11th ed.2009) (defining “occupy” as “to take up (a place or extent in space) <this chair is occupied > <the fireplace will [occupy] this corner of the room>”); The American Heritage Dictionary of the English Language (5th ed.2011) (defining “oc *630 cupy” as “[t]o fill up” and “[t]o dwell or reside in (an apartment, for example)”); Oxford American Dictionary (3d ed.2010) (defining “occupy” as to “reside or have one’s place of business in (a building)”; and to “fill or take up (a space or time): two long windows occupied almost the whole of the end wall ”). Applying these definitions, the word “occupying” in section 504B.001, subdivision 12, plainly requires a “residential tenant” to have physical possession of the leased premises.[2]
But the court determines that the plain meaning of “occupying” under section 504B.001, subdivision 12, merely requires a “present legal right” to possession of the premises. Under the court’s rule, a person may establish such “present legal possession” by proof of the effective date of a lease agreement, even if the person never actually possessed the dwelling.
To reach this conclusion, the court does not rely on the ordinary definitions of '“occupy,” as cited above. Rather, the court recites ordinary definitions, concludes they “do not resolve the question of whether the phrase ‘is occupying1 refers only to physical occupancy,” and then appears to rely in part on technical definitions from Black’s Law Dictionary and the creation of the landlord-tenant relationship at common law. In some cases, we have relied on Black’s Law Dictionary as a useful aid in statutory interpretation. See Goodman v. Best Buy, Inc., 777 N.W.2d 755, 759 n. 2 (Minn.2010). As a general rule, however, we are required to interpret statutory words “according to their common and approved usage.” Minn.Stat. § 645.08(1) (emphasis added). As an exception, our rules of construction allow us to rely on technical definitions and ascribe a special meaning to “technical words ... and such others as have acquired a special meaning.” . Id.; see State v. Rick, 835 N.W.2d 478, 484 (Minn.2013) (“While we generally interpret statutory words according to their common meaning, our textual canons of interpretation provide that technical words and phrases ... are construed according to [their] special meaning.” (quoting Staab v. Diocese of St. Cloud, 813 N.W.2d 68, 72 (Minn.2012))); State v. Wertheimer, 781 N.W.2d 158, 162-63 (Minn.2010) (“We construe words in statutes consistent with their common usage, unless those words have a different technical meaning in context.”). Thus, we may deviate from an ordinary meaning only if we determine that a statutory word is used in a “technical” sense or-'has acquired a “special” meaning. See, e.g., Lee, 852 N.W.2d at 690-91; Cty. of Dakota v. Cameron, 839 N.W.2d 700, 708 (Minn.2013). Whether a word is used in a technical sense or has acquired a special meaning depends on the statute’s language and its context. See, e.g., Lee, 852 N.W.2d at 691 (“In deciding whether words in a statute have a technical meaning or an ordinary meaning, we look at the context in which the phrase appears.”); Rick, 835 N.W.2d at 484; Wertheimer, 781 N.W.2d at 162-63.
Here, there is no indication that the word “occupying” is used in a technical sense or has acquired a special meaning according to the language and context of section 504B.001, subdivision 12. “Occupying” is hardly a technical or legalistic *631 word. And the context in which this word appears shows that a common and ordinary meaning is intended — i.e., actual, physical possession of a residential dwelling. The subsequent phrase in this provision, “under a lease or contract,” Minn. Stat. § 504B.001, subd. 12, accounts for the technical, legal aspect of the residential tenancy: obtaining legal rights to the dwelling by a lease agreement. It is unreasonable to assume that, the Legislature intended the word “occupying” to have the same technical meaning. In sum, nowhere does the statutory language demonstrate that the Legislature intended a specialized, technical meaning of the word “occupying” that encompasses a tenant’s mere “present legal right” to possess a dwelling, rather than its ordinary meaning, which requires actual possession of the dwelling.
Additionally, the court’s present-legal-possession approach to defining “occupying” is unreasonable because it violates our rule against surplusage. This rule of statutory construction requires us to “give effect to all [of a statute’s] provisions,” Minn. Stat. § 645.16 (2014), so that “no word, phrase, or sentence [is] deemed superfluous, void, or insignificant,” Allan v. R.D. Offutt Co., 869 N.W.2d 31, 33 (Minn.2015) (quoting Am. Family Ins. Grp. v. Schroedl, 616 N.W.2d 273, 277 (Minn.2000)); see Goodman, 777 N.W.2d at 758 (“Every word [in the statute] should be given effect.”). Here, a residential, tenant is defined as a “person who is occupying a dwelling in a residential building under a lease or contract_” Minn.Stat. § 504B.001, subd. 12. If, as the court concludes, a person becomes a “residential tenant” merely through “present legal possession” by executing a lease agreement, then the phrase “is occupying” is given no effect and violates the rule against surplus-age. The only reasonable plain meaning of section 504B.001, subdivision 12, which gives effect to all its language and does not render any word or phrase .superfluous, is that a “residential tenant” must have both physical possession (by actually “occupying” the dwelling) and a legal right to possess the dwelling by reason of an executed lease agreement (“under a lease or contract”).
The court’s decision also relies incorrectly on the common law meaning and the dictionary definition of “tenancy” to define “occupying.” Because the definition of a “residential tenant” is provided by statute, under section 504B.001, subdivision 12, we must look solely to that statutory definition to determine whether a residential “tenancy” exists for the purpose of applying the lockout statute, rather than turning to the common law of tenancies and landlord-tenant relationships or dictionary defi-' nitions. See State v, Schmid, 859 N.W.2d 816, 820 (Minn.2015) (“We do not turn to the common law definition of a word if the statute provides its own definition.”); State v. Koenig, 666 N.W.2d 366, 373 (Minn.2003) (“[U]nder a plain meaning analysis, we must éxamine the definition given by the statute for the term.... [W]e do not rely on [the dictionary] definition of [a word when] the statute provides a definition;”). It is not reasonable to ascribe a common law meaning or dictionary definition to a “residential tenancy ” when the Legislature has provided a statutory definition for’ a “residential tenant.”- Under the lockout' statute, a residential “tenancy” by a “residential tenant” is established, of course, only if the statutory definition of “residential tenant” is satisfied. Without a “residential tenant,” there can be no residential “tenancy,” and vice versa.
Under the court’s present-legal-possession approach, the “most natural and reasonable meaning of ‘is occupying’ ” extends to the present legal right to occupy. Supra at 628. Under my approach, the residential tenancy begins at actual posses *632 sion — that is, when a tenant “is occupying” the premises. A person will not always become a “residential tenant” immediately, at the time of entering into a residential lease agreement. “Present legal possession” is not necessarily established immediately when a lease agreement is executed. Lease agreements usually set a future date of occupancy, i.e., the “move-in” date. Although at common law a landlord-tenant relationship is created when the. right to possession of the premises is transferred from the landlord to the tenant, before the move-in date, the prospective tenant does not yet have the present legal right to occupy the dwelling, as the court’s approach requires. Indeed, before the move-in date, a previous tenant is often still legally occupying the dwelling, despite the execution of a lease agreement with a new prospective tenant that includes a future move-in date. The definition of “residential tenant” under section 504B.001, subdivision 12, is not satisfied until a tenant “is occupying” the dwelling and not merely “will be occupying in the future” under a lease agreement.
Thus, under either approach, typically there will be some period between executing the lease agreement and becoming a “residential tenant” with standing.. under the lockout statute. And as a practical matter, it is noteworthy that “legal possession” and “actual possession” often will be established the same day — the move-in date arrives (“legal possession”), and the tenant picks up the keys and moves in (“actual possession”). Any gap in time between obtaining .“present legal possession” and “actual possession” of a dwelling is minimal. Once the two elements are obtained, the tenant need not remain continuously present to initiate an action or report a violation under the lockout statute — merely obtaining physical access or control, e.g., picking up the keys, is sufficient.
' Further, the court’s hypothetical about severe violations of housing regulations before the move-in date, see Minn.Stat. § 504B.395, subd. 1(1) (2014), is misplaced. First, as I discuss above, a prospective tenant’s “move-in” date, as specified in the lease agreement, must arrive before even “legal possession” exists. A “legal right” to occupy a dwelling cannot exist before the move-in date arrives. Thus, even under the court’s present-legal-possession ' approach, a prospective tenant must wait until the move-in date to have standing as a “residential tenant” to allege a housing-code violation. Second; under my actual-possession approach, when the move-in date arrives and a housing-code violation still exists, the tenant need not remain continuously present in the dwelling with such a severe violation. Rather, as explained above, to have standing as a “residential tenant,” physically “occupying” the dwelling, the tenant need' merely have physical access or control, which exists, for example, as soon as the prospective tenant accepts keys from the landlord to access the dwelling.
As a practical and policy matter,[3] the court’s decision introduces a host of potential problems and is inconsistent with the purpose of the lockout statute. Minnesota’s lockout statute provides an extraordinary remedy to tenants, which is *633 appropriate only for the extraordinary circumstances the statute was intended to protect. The lockout statute is designed to provide expeditious, summary ex parte relief (i.e., without an opportunity for the landlord to object or respond before relief is granted) for residential tenants who are dispossessed (e.g., locked out), of the homes that they actually occupied. Given the extraordinary nature of this relief, the Legislature limited the remedies to dispossessed tenants who were actually “occupying" a residential unit by physical presence or control — and not those who merely claim á present legal right of occupancy under a disputed lease agreement. That the landlord has “a clear, speedy, effective, and equivalent remedy” should not permit the court to interpret the phrase “is occupying” süch that landlords would now be required to invoke this remedy more frequently. The circumstances of this case, which essentially presents a contract dispute, are better suited for other, less extraordinary legal avenues, such as a civil suit for specific performance-of a contract, in which both parties may be heard. In the two.decades since the lockout statute was enacted, there is no reported decision from a Minnesota court (including the' other courts in this case) ever allowing a lockout petition to proceed on the basis of a disputed lease agreement and no actual occupation of a residential dwelling.
Finally, the mere requirement of “present legal possession” to bring a lockout petition introduces ' a host of potential problems, especially in potential simultaneous “occupancy” disputes. For example, there is a disputed lease agreement involving two tenants, who both allege the right to occupy the same unit: could each tenant bring an ex parte lockout petition for summary relief? Even worse, there is a dispute about the move-⅛ daté provided in a lease agreement and the previous tenant is physically occupying 'the unit.' Could the new prospective tenant bring a lockout petition when his or her alleged move-in date arrives, requesting summary ex parte eviction of the previous tenant who claims a legal right to continue occupying, and is actually living in, the apartment?[4] Such controversies are better suited for a civil lawsuit in which both parties are heard and disputes of factual and contractual issues may be resolved. An actual-possession approach avoids the threat of simultaneous occupancy because only one party has standing to bring a lockout petition baséd on current, physical possession of the residential dwelling.
For the above reasons, the only reasonable plain meaning of “occupying;” as used in section 504B.001, subdivision 12, requires a “residential tenant” to have actual, physical possession of a residential dwelling under a lease or contract. Therefore, the lockout statute is inapplicable to Cocchiarella, who . was never “occupying” the residential dwelling that was subject to an alleged oral lease agreement. For these reasons, I respectfully dissent.
GILDEA,. Chief Justice
(dissenting).
I join in the dissent of Justice Anderson.

. Cocchiarella alleged that she had an oral lease agreement with Driggs, as shown by a 'receipt stating: "Deposit & 1st month rent,” Driggs’s position is that there was no lease agreement and that he requires applicants to pay a security deposit and first month’s rent with an application, which is returned if an application is denied. . Cocchiarella does not *629 allege that a written lease agreement was ever signed. .
As the court • correctly observes, because Cocchiarella’s appeal comes to us following a Rule 12 dismissal, at this stage we must presume the allegations in Cocchiarella’s petition to be true. See Park Nicollet Clinic v. Hamann, 808 N.W.2d 828, 831 (Minn.2011). Therefore, we presume that there was an oral lease agreement.

. I agree with amicus curiae Minnesota Multi House Association that continuous physical presence in the dwelling is not necessary — • even physical access or control, such as being provided with a key, or being allowed to enter the dwelling to deposit belongings, is sufficient to satisfy the plain meaning of "occupying.” But that did not occur here. Cocchiar-ella was never given a key, never entered the dwelling; and never deposited belongings; her only connection to the dwelling was the oral lease agreement, which did not include an effective date.

. The court's assertion that I erroneously explore the purpose of the law is misplaced. It is true that when language in a statute is unambiguous, the court generally cannot examine policy justifications or explore the spirit or purpose of the law. However; here the Legislature included its purpose within the text of the statute, Minn. Stat. § 504B.375, subd. 5 (2014), and "[w]hen the words of a law ,,. are clear and free from all ambiguity, the letter of the law shall not be disregarded.” Minn.Stat. § 645.16. In the lockout statute, the purpose of the statute is the letter of the law. /

. A similar threat arose here. Although Coc-chiarella knew that Driggs still physically occupied the allegedly leased dwelling, Coc-chiarella’s counsel proposed, at the ex parte hearing on the lockout petition, that the referee "enter an order directing ... that Driggs must vacate the property,” Had the referee agreed and issued such an. order, Driggs would have been summarily evicted from his own dwelling, based on a disputed oral lease agreement, with no opportunity to respond before'the order was issued, despite his position that no lease agreement was made and the lack of actual occupancy by Cocchiarella.