STATE of Minnesota, LAKE MINNE-
TONKA CONSERVATION DIS-
TRICT, Appellant,

v.

Lynn Edward HORNER, Respondent.

No. C5–99–1027.

Court of Appeals of Minnesota.

Jan. 25, 2000.

Review Granted March 28, 2000.

Steven M. Tallen, Tallen & Baertschi, Minneapolis, for appellant.

Marc S. Berris, Minneapolis, for respondent.

Considered and decided by RANDALL, Presiding Judge, KLAPHAKE, Judge, and PETERSON, Judge.

## OPINION

PETERSON, Judge.

In this pretrial appeal from an order suppressing evidence and dismissing all charges against respondent Lynn Edward Horner, the state argues that the trial court erred by concluding that the special deputies who arrested Horner were not peace officers with authority to make an investigative stop. The prosecutor also argues that even if the special deputies were not peace officers, their citizen's arrest authority permitted them to detain Horner to determine whether he was under the influence of alcohol. We affirm in part, reverse in part and remand.

## FACTS

Early in the evening on September 5, 1998, Stephanie Jung and Joseph Martin were on duty as special deputies of the Hennepin County Sheriff's Water Patrol. Special deputies are volunteers who assist in patrolling the lakes and rivers in Hennepin County. Jung and Martin wore uniforms, but they were not licensed peace officers. The patrol boat they were using was marked "Sheriff" and was equipped with emergency lights and a siren.

The special deputies saw a personal watercraft enter Gray's Bay on Lake Minnetonka. They determined that the craft was violating the quiet waters ordinance of the Lake Minnetonka Conservation District Code of Ordinances and pursued the craft. After stopping the craft, they learned that respondent Lynn Edward Horner was driving it.

The special deputies testified that they detected the odor of alcohol on Horner's breath, and both believed that his speech was slurred. Martin testified that Horner's watercraft was travelling at least 30 miles an hour, Horner was not wearing protective eyewear, and his eyes were red. Martin ordered Horner to climb into the patrol boat. Once Horner was aboard the patrol boat, Martin administered three field sobriety tests. Martin then told Horner that he was under arrest for boating while intoxicated. The special deputies took Horner to shore where a Hennepin County sheriff's deputy took him into custody.

Horner was charged with boating while under the influence, boating with an alcohol concentration of .10 or more, having an alcohol concentration of .10 or more within two hours of operating a motorboat, careless operation of a watercraft, and violating the quiet waters ordinance, all in viola-

tion of the Lake Minnetonka Conservation District Code of Ordinances.

## ISSUES

1. Were the special deputies peace officers?

2. Did the special deputies have authority to make an investigative stop or probable cause to arrest Horner?

## ANALYSIS

■ Horner filed a motion to suppress all evidence obtained by the special deputies after Martin ordered Horner to board the patrol boat. The trial court determined that the special deputies were not peace officers, and therefore, their only authority to arrest Horner was their authority as private citizens, which did not include authority to make an investigative stop. Because the special deputies did not have authority to detain Horner to determine whether he was boating while intoxicated, the trial court suppressed all evidence obtained after the special deputies ordered Horner into the patrol boat to conduct field sobriety tests. Then, because the remaining evidence did not establish probable cause to believe that Horner was boating while intoxicated, the trial court dismissed all charges.

> Normally, [an appellate] court will only reverse a pre-trial decision of the trial court suppressing evidence if the State demonstrates "clearly and unequivocally that the trial court has erred in its judgment and that, unless reversed, the error will have a critical impact on the outcome of the trial."

*State v. Othoudt,* 482 N.W.2d 218, 221 (Minn.1992) (quoting *State v. Webber,* 262 N.W.2d 157, 159 (Minn.1977)). There is no dispute that the trial court's decision will have a critical impact on the outcome of the trial. The only issue before us is whether the trial court clearly and unequivocally erred in its judgment that the special deputies (1) were not peace officers and (2) did not have authority to make an

investigative stop or probable cause to arrest Horner.

1. Minn.Stat. § 629.30, subd. 2 (1998), provides:

> An arrest may be made:
>
> (1) by a peace officer under a warrant;
>
> (2) by a peace officer without a warrant;
>
> (3) by an officer in the United States customs service or the immigration and naturalization service without a warrant;
>
> (4) by a private person.

■ Statutory construction is a question of law, which this court reviews de novo. *Sorenson v. St. Paul Ramsey Med. Ctr.,* 457 N.W.2d 188, 190 (Minn.1990). There is no statutory definition of "peace officer" that explicitly applies to section 629.30.

> Where the words of a law are not explicit, the intent of the legislature may be ascertained by considering other laws upon the same or similar subjects.

*In re Butler,* 552 N.W.2d 226, 231 (Minn. 1996) (citations omitted).

The state contends that the trial court erred when it concluded that the special deputies were not peace officers for purposes of making an arrest under Minn. Stat. § 629.30, subd. 2(1)-(2). Citing Minn. Stat. §§ 169.791, subd. 1(f), 609.487, subd. 2, 626.05, subd. 2, 626.71, subd. 1(2), 626.84, subd. 1(c) (1998), which each provides a definition of "peace officer," the state argues that because there is not a uniform statutory definition of peace officer, this court should rely on a common sense definition. The state contends that because the special deputies wore uniforms and drove a patrol boat marked "Sheriff" and equipped with emergency lights and a siren, the special deputies were peace officers for purposes of enforcing boat and water safety rules and regulations on Lake Minnetonka. Therefore, the state concludes, the special deputies could exercise the arrest powers of peace officers.

■ The state's argument ignores the fact that all of the statutory definitions of peace officer it cites that refer to Minnesota peace officers limit application of the term to a peace officer who is licensed by the Minnesota Board of Peace Officer Standards and Training. Of the cited statutory definitions, only Minn.Stat. § 626.71, subd. 1(2), which specifically applies only to Minn.Stat. § 626.71 (1998), and Minn. Stat. § 609.487, subd. 2(2), which specifically applies only to Minn.Stat. § 609.487 (1998), do not include this limitation.

Under Minn.Stat. § 626.71, subd. 2, a peace officer from another state who enters Minnesota to continue the fresh pursuit of a person to arrest the person for a nonfelony violation committed in the peace officer's presence is given the same authority as a Minnesota peace officer to arrest and hold that person in Minnesota. Because Minn.Stat. § 626.71, subd. 2, grants authority to peace officers from other states, it would make no sense, for purposes of that statute, to limit the meaning of the term peace officer to persons licensed by the Minnesota Board of Peace Officer Standards and Training.

Similarly, Minn.Stat. § 609.487, subd. 1, defines the crime of fleeing a peace officer in a motor vehicle, and Minn.Stat. § 609.487, subd. 2, defines peace officer to include (1) an employee of a Minnesota law enforcement agency who is licensed by the Minnesota Board of Peace Officer Standards and Training and (2) a member of a law enforcement unit of another state. It would make no sense for this definition to require that peace officers from other states be licensed by the Minnesota board. Thus, even the statutes the state relies on to argue that there is not a uniform statutory definition of peace officer consistently limit the meaning of peace officer to peace officers licensed by the Board of Peace Officer Standards and Training, except when there is a significant reason to do otherwise.

■ Our review of other statutes concerning peace officers also supports a con-clusion that "peace officer," as used in Minn.Stat. § 629.30, subd. 2(1)-(2), means a peace officer licensed by the Board of Peace Officer Standards and Training.

Minn.Stat. §§ 626.84–.863 (1998) establish the Board of Peace Officer Standards and Training and specify its powers and duties. These powers include the power to certify peace officer training programs and to license peace officers that successfully complete certified training programs. Minn.Stat. § 626.845, subd. 1(a), (d). Relying on a common sense definition of peace officer that applies to the special deputies simply because they wore uniforms and drove a patrol boat marked "Sheriff" and equipped with emergency lights and a siren would be inconsistent with the statutory licensing system for peace officers. By creating a training and licensing system for peace officers and defining the term peace officer to mean peace officers who are licensed, the legislature implied that when it uses the term peace officer, it means a licensed peace officer. We, therefore, conclude that the term peace officer in Minn.Stat. § 629.30, subd. 2(1)-(2), means a peace officer licensed by the Board of Peace Officer Standards and Training.

The state argues that the special deputies were authorized by Lake Minnetonka, Minn., Conservation Dist.Code § 1.09 (1990) and by Hennepin County, Minn., Ordinance No. 14 (1996) to enforce the regulations of the conservation district. But given our interpretation of Minn.Stat. § 629.30, subd. 2(1)-(2), these local code provisions do not support the state's argument.

Lake Minnetonka, Minn., Conservation Dist.Code § 1.09 states:

> Special deputies duly appointed and sworn by the Hennepin County Sheriff are hereby authorized to enforce the provisions of this Code by the issuance of citations and such other means as permitted by state law.

Hennepin County, Minn., Ordinance No. 14, § 1, states:

> The County Board of Hennepin County ordains that Special Deputies duly appointed and sworn by the Hennepin County Sheriff are hereby granted the authority to enforce, through the issuance of citations and such other means as permitted by state law, the provisions of any state or local statutory or regulatory provision governing water, boat, vehicle or traffic safety.

The plain language of both of these local code provisions granted the special deputies only the enforcement authority permitted by state law. Because Minn.Stat. § 629.30, subd. 2, does not permit the special deputies to exercise the arrest powers of a peace officer, the code provisions do not grant the special deputies those arrest powers.

■ The state also argues that Horner's arrest is valid under Minn.Stat. § 86B.105 (1998), which requires the sheriff to maintain a patrol program to enforce the boat and water safety laws, and Minn.Stat. § 86B.801 (1998), which grants the sheriff broad enforcement authority.

Minn.Stat. § 86B.801 states:

> Subdivision 1. **Authority.** (a) A sheriff or conservation officer may stop, inspect, and detain for a reasonable time a watercraft observed in violation of Minnesota Statutes or rules, and is empowered to issue a summons and complaint for violations of this chapter in the same manner as for violations of game and fish laws.
>
> (b) As used in this subdivision, "inspect" does not mean the authority to board a watercraft.
>
> Subd. 2. **Enforcement Duties.** The sheriff of each county and conservation officers shall enforce the provisions of this chapter.

The state argues that because Minn.Stat. § 86B.801 grants the sheriff these broad enforcement duties, and there is no restriction that requires the sheriff to use only licensed peace officers to perform the duties, the sheriff may choose to use special deputies. The state contends that Minn.Stat. § 387.03 (1998) supports the argument that the sheriff has authority to choose who will enforce the water safety laws. Minn.Stat. § 387.03 states:

> The sheriff shall keep and preserve the peace of the county, for which purpose the sheriff may require the aid of such persons or power of the county as the sheriff deems necessary.

These statutes grant the sheriff broad discretion to select staff to perform the sheriff's duties. But there is no basis for concluding that this broad discretion includes the authority to bestow arrest powers on staff members who do not have those powers under Minn.Stat. § 629.30, subd. 2. Because the special deputies were not peace officers, their only authority to arrest Horner was their authority as private persons.

■ 2. The state argues that even if the special deputies were not peace officers, their authority, as private persons, to arrest Horner allowed them to detain him long enough to determine whether he was under the influence of alcohol. We disagree.

> A private person may arrest another:
>
> (1) for a public offense committed or attempted in the arresting person's presence;
>
> (2) when the person arrested has committed a felony, although not in the arresting person's presence; or
>
> (3) when a felony has in fact been committed, and the arresting person has reasonable cause for believing the person arrested to have committed it.

Minn.Stat. § 629.37 (1998). In order to make an arrest, a private person must have probable cause. *Johnson v. State, Dep't of Pub. Safety,* 351 N.W.2d 2, 5 (Minn.1984).

The trial court determined that the special deputies had authority to stop Horner

and issue him a citation when they saw him violate the quiet waters ordinance. But if, after stopping him, they did not have probable cause to believe that he was boating while intoxicated, they did not have authority to detain him to investigate whether he was intoxicated. We agree.

■ Investigative stops have been recognized as police-citizen encounters that do not rise to the level of formal arrests. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). Under the citizen's arrest statute, the special deputies did not have comparable authority to conduct an investigative stop. As private persons, their only authority under the citizen's arrest statute to make an arrest for a nonfelony offense was to make an arrest for an offense committed in their presence. Minn.Stat. § 629.37. If they could not determine from the events that they witnessed that there was probable cause to believe that Horner had committed the offense of boating while intoxicated, they could not arrest him for that offense or detain him for investigation.

> Probable cause for an arrest has been defined as "a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious [person] in believing the accused to be guilty."

*Clow v. Commissioner of Pub. Safety*, 362 N.W.2d 360, 362 (Minn.App.1985) (quoting *Garske v. United States*, 1 F.2d 620, 623 (8th Cir.1924)) (alteration in original), *review denied* (Minn. Apr. 26, 1985).

> A court's determination of probable cause is both a question of fact and of law. Once the facts have been found the court must apply the law to determine if probable cause exists.

*Id.* at 363 (citation omitted).

> [P]robable cause is not reducible to a mechanical or numerical equation. Whether certain indicia of consumption of alcohol are sufficient to satisfy a standard of probable cause depends on the facts and circumstances in each case. A

determination of sufficiency necessarily takes into account the credibility of the witness, the consistency of the testimony, the opportunity of each witness to observe, the expertise or training of a witness, the strength of the observation, and the persuasive or probative value of the observation.

*Id.*

The trial court found that the special deputies testified that after stopping Horner, they detected an odor of alcohol on his breath, and both believed that his speech was slurred. Also, one of the deputies testified that he saw Horner's watercraft traveling at least 30 miles per hour, that Horner was not wearing protective eyewear, and that Horner's eyes were red. The other deputy stated that in her opinion, there was not probable cause to arrest Horner for boating while intoxicated when he was asked to step into the patrol boat.

The trial court acknowledged that red eyes, somewhat slurred speech, and the presence of an odor of alcohol are indicia of intoxication. But the trial court concluded that without some additional indicia under the circumstances of this case, the special deputies did not have probable cause to arrest Horner for boating while intoxicated before Horner stepped into the patrol boat. In reaching this conclusion, the trial court relied primarily on the testimony of the deputy who testified that there was not probable cause and on the fact that neither deputy testified that Horner operated his watercraft in a manner that indicated intoxication.

It is also evident that the trial court found the special deputies' observations of Horner to be of limited persuasive or probative value because of the conditions under which the observations were made. The trial court specifically noted that the observation that Horner's eyes were red was made immediately after Horner drove his watercraft at a speed of at least 30 miles an hour without wearing any protective eyewear. The court also noted that it is not illegal to consume alcohol while op-

erating a watercraft, which reduced the probative value of observing an odor of alcohol.

Finally, although there were indicia of intoxication before Horner was ordered to get into the patrol boat, the special deputies did not arrest him for boating while intoxicated. Instead, they conducted field sobriety tests to determine whether he was intoxicated. This is strong evidence that the circumstances the deputies observed aroused a suspicion that Horner was intoxicated, but they were not sufficiently strong in themselves to warrant a belief that he was intoxicated. The deputies concluded that Horner was intoxicated only after they conducted the sobriety tests. However, because they had no authority to detain Horner to conduct the tests, they could not rely on the test results when determining whether there was probable cause.

The mere fact that Horner exhibited indicia of intoxication that may be sufficient to establish probable cause in certain circumstances is not sufficient to establish probable cause in all circumstances. Considering all of the facts and circumstances that the trial court considered, we conclude that the state has not demonstrated clearly and unequivocally that the trial court erred when it determined that the special deputies lacked probable cause to arrest Horner for boating while intoxicated before he was ordered to step into the patrol boat.

We also conclude, however, that the trial court erred when it dismissed the charge for violating the quiet waters ordinance. Horner moved to dismiss all charges against him, and when the trial court granted the motion, the quiet waters ordinance violation charge was dismissed. Because the trial court's probable cause analysis does not address the quiet waters ordinance violation other than to say that the parties stipulated that the special deputies had probable cause to stop Horner and issue a citation, it appears that the quiet waters ordinance violation charge

was inadvertently dismissed. We, therefore, reverse the dismissal of that charge and remand for further proceedings.

## DECISION

Because the special deputies were not peace officers under Minn. Stat., § 629.30, subd. 2(1)-(2), they did not have authority to detain Horner to determine whether he was intoxicated, and the trial court did not err by suppressing the evidence the special deputies obtained as a result of his detention. The state has not demonstrated that the trial court clearly and unequivocally erred when it determined that the evidence the special deputies obtained before they detained Horner did not establish probable cause to arrest him for boating while intoxicated or for careless operation of a watercraft. The trial court erred by dismissing the charge for violating the quiet waters ordinance.

**Affirmed in part, reversed in part and remanded.**