STATE OF MINNESOTA

IN SUPREME COURT

A12-2078

Court of Appeals                                                    Dietzen, J.


Housing and Redevelopment
Authority of Duluth,

                    Appellant,

vs.                                                       Filed:  August 27, 2014
                                                          Office of Appellate Courts
Brian Lee,

                    Respondent.

_____

Joseph J. Mihalek, Eric S. Johnson, Fryberger, Buchanan, Smith & Frederick, P.A.,
Duluth, Minnesota, for appellant.

Gwen Updegraff, Legal Aid Service of Northeastern Minnesota, Duluth, Minnesota, for
respondent.

Mary G. Dobbins, Landrum Dobbins, LLC, Edina, Minnesota, and Shannon Guernsey,
Minnesota NAHRO, Saint Paul, Minnesota, for amicus curiae Minnesota Chapter of the
National Association for Housing and Redevelopment Officials.

_____

S Y L L A B U S

1.      The eight percent limitation on late fees that landlords of residential

buildings may charge under Minn. Stat. § 504B.177 (2010) is not preempted by federal

law regarding public housing authorities, as set forth in 42 U.S.C. § 1437d(*1*)(2) (2012) and 24 C.F.R. § 966.4(b)(3) (2013).

2. Because the public housing authority failed to establish that the eight percent limitation on late fees set forth in Minn. Stat. § 504B.177(a) conflicts with a federal statute, regulation, or handbook within the meaning of Minn. Stat. § 504B.177(b), the public housing authority was subject to the eight percent limitation.

Affirmed.

O P I N I O N

DIETZEN, Justice.

This appeal involves an eviction action brought by appellant Housing and Redevelopment Authority of Duluth (HRA) against respondent Brian Lee, a tenant living in federally subsidized housing, after he failed to pay late fees assessed by the HRA under his lease. Lee argued that the late fees were invalid and unenforceable under Minn. Stat. § 504B.177 (2010), which generally places a limitation, or cap, on late fees for residential housing tenants at eight percent of the overdue rent payment. The HRA argued that the late fees were permitted under federal law governing public housing authorities, which allows late fees, provided that the fees are not unreasonable. The district court concluded that the HRA was entitled to evict Lee because federal law preempts the state limitation on late fees with respect to public housing authorities. The court of appeals reversed, concluding that there is no conflict between federal law and the eight percent limitation on late fees. We conclude that the eight percent limitation on late

fees in Minn. Stat. § 504B.177(a) is not preempted by federal law, and does not conflict with a federal statute, regulation, or handbook within the meaning of Minn. Stat. § 504B.177(b). Because the HRA failed to establish that the eight percent limitation conflicts with federal law, the HRA was subject to the eight percent limitation. Therefore, we affirm the court of appeals' decision to reverse the eviction.

Lee is a tenant residing in a multi-unit apartment building known as "Tri-Towers" in Duluth.[1] The apartment building is conventional public housing, owned and operated by the HRA, and authorized by the United States Housing Act of 1937. *See* 42 U.S.C. § 1437f (2012). The contractual rights of the parties were set forth in a written lease executed on August 29, 2011. The lease provided that Lee was to pay monthly rent in the amount of $50, due on or before the fifth day of each month. The lease also provided for a $25 late fee if Lee did not pay his rent in full by the fifth day of the month. Lee's rent was based on his income of $203 per month, all of which came from General Assistance.

Lee's account became delinquent in July 2012 after he failed to pay in full a $95 charge assessed for repair and maintenance services. As a result, Lee's rent payments were late in July, August, and September 2012. The HRA charged a $25 late fee each month, for a total of $75.

When the HRA filed this eviction action on September 26, 2012, for nonpayment of rent, the total amount in arrears was $50. The sole issue presented to the district court

---

[1] The parties entered into a stipulation of facts and submitted the matter to the district court for decision.

was whether the monthly $25 late fee provided in the parties' lease violates Minn. Stat. § 504B.177.

The district court entered judgment for the HRA on its eviction action. The court concluded that even though the late fees exceeded eight percent of Lee's overdue rent payments, federal law preempts the eight percent limitation in Minn. Stat. § 504B.177(a). The court determined that a conflict exists between the state statute and federal law because the state statute places an eight percent limitation on late fees, while federal law pertaining to public housing places no limitation on late fees, other than to require that lease provisions not be unreasonable. *See, e.g.*, 42 U.S.C. § 1437d(*l*)(2) (2012). In addition, although the parties did not present any evidence or stipulate as to the reasonableness of the late fees, the district court found that the late fees were reasonable and therefore valid under federal law.

Lee appealed, and the court of appeals reversed the eviction. *Hous. & Redev. Auth. of Duluth v. Lee*, 832 N.W.2d 868, 879 (Minn. App. 2013). The court of appeals concluded that there is no conflict between Minn. Stat. § 504B.177(a) and federal law; consequently, the HRA was required to comply with the eight percent limitation on late fees in the state statute. 832 N.W.2d at 878. The court of appeals further concluded that the late fees were unreasonable and "therefore not in compliance with the federal standard." *Id.* at 879. We granted the petition of the HRA for further review.

The HRA raises three issues for our review: (1) whether the eight percent limitation on late fees for overdue rent in Minn. Stat. § 504B.177(a) is preempted by

4

federal law; (2) whether the late fees imposed by the HRA were permitted under Minn. Stat. § 504B.177(b); and (3) whether the court of appeals erred in deciding that the late fees were unreasonable under federal law. We address each issue in turn.

I.

The question of whether the state statute is preempted by federal law with respect to public housing authorities is primarily an issue of statutory interpretation, which we review de novo. *In re Estate of Barg*, 752 N.W.2d 52, 63 (Minn. 2008). The goal of all statutory interpretation is to ascertain and effectuate the intent of the Legislature. Minn. Stat. § 645.16 (2012). Similarly, we review de novo the application of law to stipulated facts. *Barg*, 752 N.W.2d at 63.

Minnesota Statutes § 504B.177(a) requires that a late fee for overdue rent for residential rental property be specified in writing. The statute also provides that "[i]n no case may the late fee exceed eight percent of the overdue rent payment." *Id.* It is undisputed that the late fees charged by the HRA violate the eight percent limitation. The first question we must answer is whether federal law preempts the eight percent limitation on late fees in section 504B.177(a) for a federally subsidized residence such as Lee's apartment.

Under the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2, federal law, including federal regulations that have the force of law, preempts state law if Congress intends that it do so. *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152-54 (1982). Federal law can preempt state law in three ways:

through (1) field preemption, (2) express preemption, and (3) conflict preemption (sometimes called "implied conflict preemption"). *Id.*; *see also Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995); *Barg*, 752 N.W.2d at 63-64 (discussing the three types of preemption). It is undisputed that only the third type of preemption, conflict preemption, is at issue here.[2]

Conflict preemption may arise in two different ways. First, a state law is preempted by means of conflict preemption if a party cannot simultaneously comply with both state and federal law. *Barg*, 752 N.W.2d at 64 (citing *Fla. Lime Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963)). Second, a state law is preempted by means of conflict preemption if the state law is an obstacle to achieving the purpose of a federal law. *Angell v. Angell*, 791 N.W.2d 530, 535 (Minn. 2010) (citing *Freightliner*, 514 U.S. at 287).

The HRA argues that when a public housing authority (PHA) has determined that a reasonable late fee is greater than eight percent of an overdue payment, it is impossible to comply with both the federal reasonableness standard and Minn. Stat. § 504B.177(a). According to the HRA, this possibility gives rise to conflict preemption. We disagree.

---

[2] It is also true that when Congress legislates in a domain that has traditionally been occupied by the states, Congress's preemptive intent must be "clear and manifest" for a court to find preemption. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (citation omitted) (internal quotation marks omitted). Although real-estate law is a classic example of an area of law that has traditionally been occupied by the states, the federal subsidization of housing arguably falls outside of the traditional domain of real-estate law for preemption purposes. In any event, even without applying a presumption against the preemption of traditional areas of state law, there is no preemption in this case.

The "federal reasonableness standard" to which the HRA refers derives from the combination of a federal statute and a federal regulation. The relevant federal statute is 42 U.S.C. § 1437d(*l*)(2), which requires every PHA to "utilize leases which . . . do not contain unreasonable terms and conditions." Notably, the statute does not *mandate* the inclusion of *reasonable* terms and conditions in a PHA's lease; it simply *forbids* the inclusion of any *unreasonable* terms and conditions. The relevant federal regulation is 24 C.F.R. § 966.4(b)(3) (2013), which provides that "[a]t the option of the PHA," a lease "*may* provide for payment of penalties for late payment." (Emphasis added.) The language of the regulation is permissive, not mandatory.

Taken together, the statute and the regulation permit a PHA to include in a lease a provision specifying a reasonable late fee for overdue rent, but they do not require the inclusion of such a provision. Accordingly, a PHA can easily comply both with the applicable federal laws and regulations and with Minn. Stat. § 504B.177(a), either by specifying no late fee at all in a lease, or by specifying a late fee of eight percent or less that is not unreasonable.

The HRA next argues that the state law stands as an obstacle to achieving the purposes of federal law. The HRA argues, in essence, that the eight percent limitation on late fees in Minn. Stat. § 504B.177(a) interferes with congressional intent to give maximum flexibility to PHAs and to increase the supply of public housing.

It is true that Congress has stated that it is "the policy of the United States . . . to vest in [PHAs] that perform well, the maximum amount of responsibility and flexibility

7

in program administration, with appropriate accountability to public housing residents, localities, and the general public." 42 U.S.C. § 1437(a)(1)(C) (2012). But, in the very same policy statement, Congress declared that it is also federal policy "to assist *States . . .* to remedy the unsafe housing conditions and the acute shortage of decent and safe dwellings for low-income families" and "to assist *States . . .* to address the shortage of housing affordable to low-income families." 42 U.S.C. § 1437(a)(1)(A)-(B) (emphasis added). The statute therefore demonstrates congressional intent to have state regulations exist side-by-side with federal regulations of subsidized housing.

The Public Housing Occupancy Guidebook promulgated by the United States Department of Housing and Urban Development (HUD) specifically contemplates that PHAs will be subject to both federal and state regulations. The Guidebook states that "[b]eyond the prohibited provisions established by" federal law, *see* 24 C.F.R. § 966.6 (2013), state laws "may establish additional prohibited provisions" and "prohibit other types of lease clauses." U.S. Dep't of Hous. & Urban Dev., *Public Housing Occupancy Guidebook* 187 (2003) ("*HUD Guidebook*"). The *HUD Guidebook* also directly addresses what should happen when a state law forbids a lease provision that federal law would allow. The *HUD Guidebook* indicates that the rule most beneficial to the tenant controls:

> HUD rules establish both required and prohibited provisions for public housing leases. In addition, PHAs are permitted to add other provisions as long as they are considered reasonable. *In the case of any conflict between the proposed HUD lease and state law, the lease adopted must follow the rule that is the most beneficial to the tenant.*

8

*Id.* at 185 (emphasis added).

Pursuant to HUD's interpretation of its regulations, federal statutes and regulations provide a floor of protection for tenants in public housing, not a ceiling, and states may forbid lease provisions that federal law would permit. This case therefore resembles *Barrientos v. 1801-1825 Morton LLC*, in which the Ninth Circuit rejected a preemption challenge to a Los Angeles ordinance that gave tenants in federally subsidized housing greater protection from eviction than did federal law. 583 F.3d 1197 (9th Cir. 2009). The HUD regulation at issue in *Barrientos* permitted a landlord to evict a tenant during a renewal period for economic reasons, such as a desire to rent a unit for more money. *Id.* at 1205. A Los Angeles ordinance, however, did not permit a landlord to evict a tenant in subsidized housing for the purpose of raising rent to market levels. *Id.* In holding that the HUD regulation did not preempt the ordinance, *Barrientos* said that there was no conflict between the regulation and the ordinance because "[t]he HUD regulation does not create a 'right' to evict tenants to raise the rent that [the ordinance] takes away. The HUD regulation merely creates a floor of protection, which local laws may enhance." *Id.* at 1207. *Barrientos* also stated that in the federal laws and regulations governing public housing, "Congress and HUD intended to provide assisted tenants with more protections than unassisted tenants, not less." *Id.* at 1210.

The HRA analogizes this case to *Fidelity Federal Savings & Loan Association v. de la Cuesta*, 458 U.S. 141 (1982). In *de la Cuesta*, the Supreme Court held that a federal regulation that *permitted* a federal savings and loan to include a "due-on-sale"

9

clause in a loan agreement preempted a California law that generally *prohibited* the enforcement of such clauses. *Id.* at 145. But the federal agency that had promulgated the regulation at issue had also said, in a preamble accompanying the regulation, that "[f]ederal associations shall not be bound by or subject to any conflicting State law which imposes different . . . due-on-sale requirements." 41 Fed. Reg. 18286, 18287 (May 3, 1976). In the same preamble, the agency said that "it was and is the [agency's] intention to have . . . due-on-sale practices of Federal associations governed exclusively by Federal law." *Id.* In light of these statements, *de la Cuesta* held that the agency regulation permitting the use of due-on-sale clauses "was meant to pre-empt conflicting state limitations on the due-on-sale practices of federal savings and loans." 458 U.S. at 159. Unlike *de la Cuesta*, there is no language from HUD expressing a preemptive intent with respect to late fees.

In short, Congress has not preempted state limitations on late fees by statute, and HUD has not preempted such limitations by regulation. The court of appeals therefore correctly concluded that the eight percent limitation on late fees in Minn. Stat. § 504B.177(a) is not preempted by federal law.

## II.

The HRA next argues that the $25 late fees provided in the lease are permitted under Minn. Stat. § 504B.177(b). Section 504B.177 contains two paragraphs that govern late fees for residential housing tenants: paragraph (a) and paragraph (b). As noted,

10

paragraph (a) provides that "[i]n no case may the late fee exceed eight percent of the overdue rent payment." Paragraph (b) provides:

> If a federal statute, regulation, or handbook providing for late fees for a tenancy subsidized under a federal program *conflicts with* paragraph (a), then the landlord may continue to publish and implement a late payment fee schedule that complies with the federal statute, regulation, or handbook.

Minn. Stat. § 504B.177(b) (emphasis added).[3]

According to the HRA, the $25 late fees were permitted under section 504B.177(b) because the eight percent limitation in paragraph (a) differs from and thus "conflicts with" the reasonableness standard under federal law. Lee responds that there is no conflict between the federal rule that allows a landlord to charge a reasonable late fee, and the state rule that restricts a late fee to eight percent of the overdue rent payment.

The interpretation of Minn. Stat. § 504B.177(b) presents a question of law, which we review de novo. *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 836 (Minn. 2012). When the language of a statute is free from ambiguity, we generally give words and phrases their plain and ordinary meaning. *Staab v. Diocese of St. Cloud*, 813 N.W.2d 68, 72 (Minn. 2012); *see* Minn. Stat. § 645.08(1) (2012) (providing that words

---

[3]    The Legislature amended Minn. Stat. § 504B.177(b) in 2012, and the 2012 amendment became effective on August 1, 2012. Act of March 20, 2012, ch. 132, § 1, 2012 Minn. Laws 37, 37. *See also* Minn. Stat. § 645.02 (2012) ("Each act . . . takes effect on August 1 . . . unless a different date is specified in the act."). The statutory amendment replaced the phrase "providing for" with "permitting," and inserted the phrase "[n]otwithstanding paragraph (a)" at the beginning of paragraph (b). 2012 Minn. Laws at 37. We apply the 2010 version of Minn. Stat. § 504B.177(b) because the 2012 amendment did not become effective until after Lee had entered into his lease. Nonetheless, we discern no material difference in the amended statute that would lead to a different result here.

11

and phrases are construed "according to their common and approved usage"). But we give technical words and phrases their special meaning. *In re Welfare of J.J.P.*, 831 N.W.2d 260, 266 (Minn. 2013); *see* Minn. Stat. § 645.08(1) (stating that "technical words and phrases" that have acquired a special meaning are construed in accordance with that special meaning). We also interpret statutes to give effect to all of their provisions, and whenever possible, "no word, phrase, or sentence should be deemed superfluous, void, or insignificant." *Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn. 1999).

The dispute here centers on the meaning of the phrase "conflicts with" in Minn. Stat. § 504B.177(b). The court of appeals concluded that "conflicts" is a technical term that refers to the doctrine of conflict preemption. *Hous. & Redev. Auth. of Duluth v. Lee*, 832 N.W.2d 868, 878 (Minn. App. 2013). The HRA disagrees with the court of appeals and urges us to apply the common and ordinary meaning of the term. According to the HRA, federal law conflicts with the state statute when the standards are different. Lee also relies primarily on the common and ordinary meaning of the term "conflicts," but argues that a conflict exists only when the state and federal standards are in opposition and cannot be harmonized.

A.

We first consider whether the phrase "conflicts with" in Minn. Stat. § 504B.177(b) has a technical meaning that refers to the doctrine of conflict preemption. In deciding whether words in a statute have a technical meaning or an ordinary meaning, we look at

12

the context in which the phrase appears. *State v. Rick*, 835 N.W.2d 478, 484 (Minn. 2013).

The phrase "conflicts with" is contained in paragraph (b) of Minn. Stat. § 504B.177. Paragraph (b) provides that if a federal statute, regulation, or handbook (a federal standard) providing for late fees "conflicts with paragraph (a), then the landlord may continue to publish and implement a late payment fee schedule that complies with the federal [standard]." Minn. Stat. § 504B.177(b). Paragraph (a) provides, among other things, that "[i]n no case may the late fee [for rent paid after the due date] exceed eight percent of the overdue rent payment." Minn. Stat. § 504B.177(a). Thus, Minn. Stat. § 504B.177(b) permits the HRA to impose a late fee that complies with federal law and not paragraph (a) if the eight percent limitation in that paragraph "conflicts with" a federal standard.

When we examine the phrase "conflicts with" in the context of paragraph (b) of the statute, it is clear that the Legislature did not use the phrase in the technical sense of "conflict preemption." To begin with, section 504B.177(b) refers to potential conflicts with a "federal statute, regulation, or *handbook*." (Emphasis added.) But as the HRA points out, only federal laws and regulations, not agency handbooks, have preemptive force. *See, e.g.*, *St. Nicholas Apartments v. United States*, 943 F. Supp. 966, 968-69 (C.D. Ill. 1996) (noting that "not all administrative manuals, handbooks, and circulars have the force of law" and concluding that a HUD handbook "did not have the force of law").

13

Further, if we interpret "conflicts with" in section 504B.177 to mean conflict preemption, then paragraph (b) of that statute is largely superfluous because a federal statute or regulation automatically prevails over an inconsistent state statute under the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2, regardless of any express acknowledgment by the Legislature. *See Angell v. Angell*, 791 N.W.2d 530, 534 (Minn. 2010). We must, however, interpret the language of the statute as a whole to give effect to all its provisions. *Staab v. Diocese of St. Cloud*, 813 N.W.2d 68, 72 (Minn. 2012). Accordingly, we hold that "conflicts with" in Minn. Stat. § 504B.177(b) does not have a technical meaning.

We turn next to an examination of the statute as a whole to determine the meaning of the phrase "conflicts with" in the context of Minn. Stat. § 504B.177(b). The HRA asserts that the common and ordinary meaning of "conflicts" is "to differ." For support, the HRA cites the *American Heritage Dictionary of the English Language*, which defines the verb "conflict" as "[t]o be in or come into opposition; differ." *The American Heritage Dictionary of the English Language* 386 (5th ed. 2011). According to the HRA, because the federal and state standards for late fees differ—a reasonableness standard versus an eight percent limitation—the standards conflict, and the HRA may impose a late fee that exceeds the eight percent limitation as long as the late fee complies with the federal reasonableness standard. Lee, on the other hand, asserts that under the "commonly accepted meaning" of the term, "conflicts" means more than simply to differ. Rather, Lee argues that "conflicts" means to differ with no possibility of agreement.

According to Lee, the federal and state standards are not incompatible—a landlord can comply with both standards by imposing a late fee that does not exceed eight percent of the overdue rent payment.

Determining the meaning of the phrase "conflicts with" contemplates a comparative analysis of the federal standard referred to in paragraph (b) and the state standard in paragraph (a) to determine if one "conflicts with" the other. Minn. Stat. § 504B.177(b). If the federal standard conflicts with the state standard, to be sure, the two standards differ. The most natural and logical interpretation of "conflicts with" in this context, however, is that the two standards differ in the sense that they are in opposition to each other or are incompatible. Indeed, the verb "conflict" means "to be different," but more precisely, "to be different in a way that prevents agreement." *Merriam-Webster's Essential Learner's English Dictionary* 249 (2010). Similarly, the *Oxford English Dictionary* defines "conflict" as "be incompatible or at variance; clash." *Oxford English Dictionary 300* (11th ed. 2009). Based on these definitions, we conclude that the phrase "conflicts with" in the context of section 504B.177(b) refers to a federal standard that is in opposition to or incompatible with the state standard.

We have utilized the same definition of "conflicts" in the related context of determining whether certain local ordinance provisions were permitted under state law. We have explained that "[i]t is generally said that no conflict exists where the ordinance, though different, is merely additional and complementary to or in aid and furtherance of the statute." *Mangold Midwest Co. v. Vill. of Richfield*, 274 Minn. 347, 352, 143 N.W.2d

15

813, 817 (1966); *see also State v. Kuhlman*, 729 N.W.2d 577, 581 (Minn. 2007) (holding that "no conflict exists" when an ordinance "covers specifically what the statute covers generally"). As a general rule, we have held that "conflicts which would render an ordinance invalid exist only when both the ordinance and the statute contain express or implied terms that are irreconcilable with each other." *Mangold*, 274 Minn. at 352, 143 N.W.2d at 816. Conversely, we have noted that " 'different from' does not mean 'in conflict with.' " *City of Morris v. Sax Invs., Inc.*, 749 N.W.2d 1, 9 (Minn. 2008) (interpreting a statute providing that a municipality may not require building code provisions that are " 'different from any provision of the State Building Code' " (quoting Minn. Stat. § 16B.62, subd. 1 (2006))).

Further, the Legislature has used the phrase "conflicts with" in several other statutes that address the interplay between federal and state law. In those statutes, the Legislature has consistently used "conflicts with" in the sense of creating an incompatibility between federal and state standards, specifying which standard—federal or state—is controlling. *See, e.g.*, Minn. Stat. § 169.4502, subd. 1 (2012) ("When a Minnesota [bus chassis] standard contained in this section *conflicts with* a national standard adopted in section 169.4501, the Minnesota standard contained in this section is controlling." (emphasis added)).[4] On the other hand, when the Legislature has meant to

---

[4]    *See also* Minn. Stat. § 119A.53 (2012) ("If a state [Head Start] statute or rule *conflicts with* a federal statute or regulation, the state statute or rule prevails." (emphasis added)); Minn. Stat. § 169.468, subd. 3 (2012) ("A federal motor vehicle safety standard adopted by the commissioner of public safety which *conflicts with* an equipment

(Footnote continued on next page.)

prohibit state standards that are merely different from federal standards, the Legislature has used the word "different." *E.g.*, Minn. Stat. § 182.655, subd. 12 (2012) (stating that state occupational safety and health standards generally "shall not be *different* from federal standards where the standard significantly affects interstate commerce" (emphasis added)).[5]

For these reasons, we hold that the plain and ordinary meaning of "conflicts with" in Minn. Stat. § 504B.177(b) refers to an incompatibility between the state standard for late fees for overdue rent in paragraph (a) and the federal standard referred to in paragraph (b).[6] In other words, under section 504B.177(b), "a federal statute, regulation,

---

(Footnote continued from previous page.)
provision of this chapter, applicable to the same aspect of performance, shall supersede, on its effective date, the conflicting equipment provision of this chapter, with respect to new motor vehicles." (emphasis added)); Minn. Stat. § 256B.75(a) (2012) ("If it is determined that a provision of this section *conflicts with* existing or future requirements of the United States government with respect to federal financial participation in medical assistance, the federal requirements prevail." (emphasis added)).

[5]     *Cf.* Minn. Stat. § 299F.362, subd. 7 (2012) (prohibiting a local unit of government from adopting smoke detector standards that are "different from" the state standards); Minn. Stat. § 326B.121, subd. 2(c) (2012) (prohibiting a municipality from adopting "building code provisions regulating components or systems of any structure that are different from any provision of the State Building Code").

[6]     The HRA asks us to consider the legislative history related to the 2012 amendment of Minn. Stat. § 504B.177(b) in order to ascertain the meaning of "conflicts." Because we conclude that the statute is not ambiguous, consideration of legislative history is not appropriate. *See In re S.G.*, 828 N.W.2d 118, 132 (Minn. 2013) ("Only if the statutory language is ambiguous may we look beyond the language of the statute to such things as the legislative history of the law."). Moreover, because the 2012 version of the statute does not apply here, the legislative history related to the 2012 amendment is irrelevant.

17

or handbook providing for late fees . . . conflicts with paragraph (a)" only if the state statute contains provisions that are incompatible with federal law.

B.

We next address whether "a federal statute, regulation, or handbook providing for late fees for a tenancy subsidized under a federal program" conflicts with the eight percent limitation on late fees in paragraph (a) of section 504B.177. Minn. Stat. § 504B.177(b). If the federal and state standards are incompatible, "then the landlord may continue to publish and implement a late payment fee schedule that complies with the federal statute, regulation, or handbook." *Id.* But if there is no conflict, then the HRA may not charge a late fee that exceeds the eight percent limitation in Minn. Stat. § 504B.177(a).

Both federal law and state law generally allow late fees in public housing leases. *See* 24 C.F.R. § 966.4(b)(3) (providing that a lease "may provide for payment of penalties for late payment"); Minn. Stat. § 504B.177. Federal law permits public housing authorities to impose late fees as long as they are not unreasonable. 42 U.S.C. § 1437d(*l*)(2) (requiring public housing authorities to utilize leases that "do not contain unreasonable terms and conditions"); *see also HUD Guidebook*, *supra*, at 190 (stating that lease terms "are always subject to the reasonableness test"). State law permits late fees as long as they do not exceed eight percent of the overdue rent payment. Minn. Stat. § 504B.177(a).

We conclude that the eight percent limitation on late fees set forth in Minn. Stat. § 504B.177(a) does not "conflict[] with" a federal statute, regulation, or handbook under Minn. Stat. § 504B.177(b). It is true that the federal and state standards differ, but the eight percent limitation on late fees (state standard) is not incompatible with the federal standard. Indeed, federal law does not expressly authorize any particular amount of fees or prohibit a state from setting a limitation on late fees that is more favorable to the tenant. The *HUD Guidebook* explicitly permits states to prohibit lease provisions beyond those prohibited by federal law and indicates that, in the case of a conflict, the provision most beneficial to the tenant prevails. *HUD Guidebook*, *supra*, at 185, 187. Thus, the federal scheme allows individual states to have a different state standard on late fees, provided that the state standard does not permit late fees that are unreasonable under federal law.

Neither party asserts that the eight percent limitation in Minn. Stat. § 504B.177(a) permits late fees that are unreasonable under federal law. In fact, Lee asserts that the late fees the HRA may assess under Minn. Stat. § 504B.177(a) are "clearly reasonable." The HRA has not addressed the reasonableness of the eight percent limitation under federal law, but takes the position that even a late fee that is equivalent to 50 percent of Lee's monthly rent is reasonable. The HRA, therefore, has not presented any evidence or argument that the state limitation on late fees is unreasonable under federal law.[7] *See*

---

[7]    There is no conceivable basis for a remand to determine the reasonableness of the eight percent limitation in this case because the HRA could not succeed in arguing under

(Footnote continued on next page.)

19

*Hebert v. City of Fifty Lakes*, 744 N.W.2d 226, 232 (Minn. 2008) (declining to consider an argument not pressed below and on which the record was not adequately developed); *Peterson v. BASF Corp.*, 711 N.W.2d 470, 482 (Minn. 2006) (stating that it is well established that the failure to address an issue "constitutes waiver of that issue").[8]

## III.

In sum, we hold that the eight percent state limitation on late fees in Minn. Stat. § 504B.177(a) is not preempted by federal law and that the limitation does not conflict with a federal statute, regulation, or handbook under section 504B.177(b). Additionally, we conclude that there is no evidence or argument that the eight percent limitation permits unreasonable late fees under federal law. We therefore affirm the court of appeals' decision to reverse the eviction.

Affirmed.

---

(Footnote continued from previous page.)
Minn. Stat. § 504B.177(b) that the eight percent limitation "conflicts with" the federal reasonableness requirement, yet a 50 percent late fee "complies with" the federal reasonableness requirement. Moreover, federal law suggests that the lease "follow the rule that is the most beneficial to the tenant." *HUD Guidebook*, *supra*, at 185.

[8] As an additional basis for invalidating the late fees, the court of appeals concluded that the $25 late fees were "unreasonable and therefore not in compliance with the federal standard." *Hous. & Redev. Auth. of Duluth v. Lee*, 832 N.W.2d 868, 879 (Minn. App. 2013). Because we conclude that the eight percent limitation does not "conflict[] with" a federal standard under Minn. Stat. § 504B.177(b), the $25 late fees imposed by the HRA are invalid as exceeding the eight percent limitation under state law. Consequently, it is not necessary for us to address the reasonableness of the late fees under federal law, and we decline to do so.