**SHERIFFS; DUTIES AND AUTHORITY;** Minnesota law does not authorize sheriffs to enter agreements under section 287(g) of the federal Immigration and Nationality Act. Instead, a county may execute a 287(g) agreement if the agreement is approved by a resolution of the county board of commissioners; Minnesota law prohibits local law enforcement officers from detaining or holding persons based solely on ICE civil immigration detainers regardless of whether the law enforcement agency is operating under a valid 287(g) agreement.



3-a; 390a6

The Office of
**Minnesota Attorney General Keith Ellison**
helping people afford their lives and live with dignity, safety, and respect • www.ag.state.mn.us

December 12, 2025

John J. Choi
Ramsey County Attorney
360 Wabasha Street North, Suite 100
St. Paul, MN 55102-1418

**Re:    Request for Advisory Opinion Pursuant to Minn. Stat. § 8.07**

Dear County Attorney Choi:

Thank you for your letter of November 25, 2025, which requests an opinion from this Office on whether Minnesota sheriffs may enter 287(g) agreements with U.S. Immigration & Customs Enforcement (ICE) and whether such an agreement permits local law enforcement officers to detain people solely on the basis of civil immigration detainer requests from ICE.

## BACKGROUND

Section 287(g) of the Immigration and Nationality Act permits ICE to enter agreements with state and local governments to authorize state or local officers to perform certain immigration duties ("287(g) agreements"). *See* 8 U.S.C. § 1357(g). Some Minnesota sheriffs have signed 287(g) agreements with ICE. Your Office requested a written opinion from our Office on the validity of these agreements under Minnesota law.

ICE sometimes issues civil immigration detainers to state and local law enforcement agencies requesting that they hold an individual who is in their custody beyond the time that they would otherwise be released so that ICE can take the individual into custody for deportation purposes. In response to a question from you, this Office previously opined that, at least in the absence of a 287(g) agreement, Minnesota law prohibits holding a person who would otherwise be released from custody based solely on an immigration detainer. *See* Op. Atty. Gen. 3a (Feb. 6, 2025). You have now asked whether a 287(g) agreement permits state and local authorities to hold a person solely on an immigration detainer.

## QUESTIONS PRESENTED

(1)    May Minnesota sheriffs unilaterally enter 287(g) agreements with ICE?

(2)    Do 287(g) agreements permit local law enforcement officers to detain persons who would otherwise be released from custody pursuant to civil immigration detainers from ICE?

## SUMMARY OF CONCLUSIONS

Minnesota law does not authorize sheriffs to enter 287(g) agreements. Instead, a county may execute a 287(g) agreement if the agreement is approved by a resolution of the county board of commissioners.

Minnesota law prohibits local law enforcement officers from detaining or holding persons based solely on ICE civil immigration detainers regardless of whether the law enforcement agency is operating under a valid 287(g) agreement.

## ANALYSIS

### I. Sheriffs may not unilaterally enter 287(g) agreements.

#### A. Sheriffs' powers are defined by state law and do not include the ability to enter cooperative agreements with the federal government.

"The office of County Sheriff is established by state statute" and "[s]pecific powers and duties of county sheriffs are defined[.]" Op. Atty Gen.390a-6 (Oct. 31, 1994) (citing Minn. Stat. § 387.03). State law specifically authorizes sheriffs to enter certain types of contracts. *See, e.g.,* Minn. Stat. § 436.05, subd. 1 (authorizing sheriffs to contract for furnishing of police service to cities and towns); Minn. Stat. § 624.714, subd. 2(c) (authorizing sheriff to contract with a police chief to process firearm permit applications). But no statute authorizes sheriffs to enter contracts with agencies of the federal government or to perform services on behalf of the federal government.

The fact that the legislature took care to enumerate certain types of contracts that sheriffs are authorized to enter into but did not authorize sheriffs to enter contracts to perform enforcement activities on behalf of the federal government implies this was an intentional omission. *See Chrz v. Mower Cnty.*, 986 N.W.2d 481, 486 (Minn. 2023) (in interpreting statutes, "the expression of one thing is the exclusion of another"). This is particularly so because in Minnesota Statutes section 436.05, the legislature enacted a detailed statute regarding contracts by sheriffs for providing law enforcement services to cities and towns but did not provide for similar contracts with the federal government. *See id* (presumption that omissions are intentional is "particularly strong when…a statute is uncommonly detailed and specific").

#### B. The Minnesota Joint Exercise of Powers Act prohibits 287(g) agreements between sheriffs and ICE.

Further, in Minnesota, agreements among governmental bodies for the joint or cooperative exercise of powers are governed by the Joint Exercise of Powers Act (the "Joint Powers Act"). *See* Minn. Stat. § 471.59; *see also* Minn. Stat. § 436.05, subd. 2 (contract by sheriff to provide police services must comply with § 471.59). A 287(g) agreement concerns the joint and cooperative

exercise of powers between an agency of the United States and a Minnesota political subdivision and is therefore subject to the Joint Powers Act. *See* Minn. Stat. § 471.59, subd. 1.

The Joint Powers Act's "commonality" requirement provides that, subject to certain exceptions, the contracting parties may only jointly exercise powers "common to the contracting parties or any similar powers." Minn. Stat. § 471.59, subd. 1(a). Sheriffs lack authority to enforce immigration law in the absence of a 287(g) agreement. *See Arizona v. United States*, 567 U.S. 387, 408 (2012) ("Federal law specifies limited circumstances in which state officers may perform the functions of an immigration officer."). A 287(g) agreement that a sheriff alone enters into therefore does not comply with the Joint Powers Act's commonality requirement. *See* Op. Atty Gen. 225i (Jan. 25, 1968) ("[I]n each case the power constituting the subject of the agreement must be one that is common to the contracting parties."); Op. Atty. Gen. 1001-A (July 20, 1955) (governmental units may not enter joint agreement where commonality requirement is not met); Op. Atty. Gen. 1007 (June 11, 1975) (same).

### C. The Joint Powers Act permits counties to enter 287(g) agreements only if authorized by the county board of commissioners.

Subdivision 8 of the Joint Powers Act creates a limited exception to the commonality requirement for counties. It provides:

> [n]otwithstanding the provisions of subdivision 1 requiring commonality of powers between parties to any agreement the board of county commissioners of any county may by resolution enter into agreements with any other governmental unit as defined in subdivision 1 to perform on behalf of that unit any service or function which that unit would be authorized to provide for itself.

Minn. Stat. § 471.59, subd. 8.

Under this exception, counties can enter 287(g) agreements but must do so by resolutions of their county boards of commissioners. But state law does not permit sheriffs unilaterally to enter a 287(g) agreement on behalf of the county.

### II. A 287(g) agreement does not authorize Minnesota law enforcement officers to detain individuals on immigration detainers.

ICE may issue immigration detainers to federal, state, or local law enforcement agencies. *See* 8 C.F.R. § 287.7. An immigration detainer "serves to advise another law enforcement agency that [DHS] seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien." 8 C.F.R. § 287.7(a). The detainer "is a request" that the receiving agency advise ICE before releasing the person and that it "maintain custody of the alien for a period not to exceed 48 hours…to permit assumption of custody by [DHS]." 8 C.F.R. § 287.7(a), (d). Several courts have confirmed that detainers are merely requests and are not mandatory. *See,*

*e.g., United States v. California*, 921 F.3d 865, 887 (9th Cir. 2019) (administrative warrants do not "*compel[]* any action by a state or local official"); *Galarza v. Szalczyk*, 745 F.3d 634, (3d Cir. 2014) ("[D]etainers are not mandatory."); *United States v. Illinois*, 796 F. Supp. 3d 494, 528 (N.D. Ill. 2025) ("Detainers are requests, not requirements.").

"As a general rule, it is not a crime for a removable alien to remain present in the United States." *Arizona v. United States*, 567 U.S. 387, 407 (2012). An immigration detainer indicates ICE's belief that a person may be removable and does not by itself indicate suspicion of criminal activity. *See, e.g., Santos v. Frederick Cnty. Bd. of Comm'rs*, 725 F.3d 451, 465 (4th Cir. 2013) ("[S]uspicion or knowledge that an individual has committed a civil immigration violation, by itself, does not give a law enforcement officer probable cause to believe that the individual is engaged in criminal activity."); *Orellana v. Nobles Cnty.*, 230 F. Supp. 3d 934, 945 (D. Minn. 2017) (immigration detainer does not establish probable cause for arrest). Further, immigration detainers are issued by ICE officers and are not reviewed by neutral magistrates like judicial warrants.[1] 8 C.F.R. § 287.7; *see also Abel v. United States*, 362 U.S. 217, 232 (1960) (immigration warrant is "not a judicial warrant within the scope of the Fourth Amendment).

This Office has previously opined that "Minnesota law prohibits state and local law enforcement agencies from holding someone based on an immigration detainer if the person would otherwise be released from custody." Op. Atty. Gen. 3a at 2 (Feb. 6, 2025). As that opinion explains, holding an individual beyond when they would otherwise be released constitutes a new arrest, no Minnesota statute authorizes arrest based solely on immigration status or immigration detainers, and an arrest unauthorized by statute is illegal. *Id.* at 5.

That opinion left open, however, "whether detainer arrests by Minnesota officials operating under a valid Section 287(g) agreement would comply with Minnesota law," *id.* at 7 n.9, which this opinion now answers. For the reasons below, 287(g) agreements do not alter Minnesota law enforcement officers' obligations to comply with Minnesota law and do not authorize them to hold persons pursuant to immigration detainers who would otherwise be released.

### A. Minnesota law does not provide broader arrest authority to law enforcement officers acting pursuant to 287(g) agreements.

The first question is whether a 287(g) agreement relaxes the state law prohibition on complying with immigration detainers discussed in this Office's prior opinion. Under certain circumstances, state law gives law enforcement officers acting under intergovernmental agreements additional authority. But for the reasons below, 287(g) agreements do not abrogate the state law prohibition on detaining persons solely due to immigration detainers.

---

[1] Nothing in this opinion should be construed to limit state or local law enforcement officers' ability to arrest or detain noncitizens pursuant to judicial warrants or the warrantless arrest of noncitizens suspected of violations of criminal law to the extent permitted by Minnesota statutes and the United States and Minnesota Constitutions.

A potential source of expanded authority for officers with 287(g) agreements is subdivision 12 of the Joint Powers Act, which provides:

> In the event that an agreement authorizes the exercise of peace officer or police powers by an officer appointed by one of the governmental units within the jurisdiction of the other governmental unit, an officer acting pursuant to that agreement has the full and complete authority of a peace officer as though appointed by both governmental units and licensed by the state of Minnesota, provided that:
>
> (1)    the peace officer has successfully completed professionally recognized peace officer preemployment education which the Minnesota Board of Peace Officer Standards and Training has found comparable to Minnesota peace officer preemployment education; and
>
> (2)    the officer is duly licensed or certified by the peace officer licensing or certification authority of the state in which the officer's appointing authority is located.

Minn. Stat. § 471.59, subd. 12. Where it applies, subdivision 12 authorizes peace officers from one jurisdiction to exercise "the full and complete authority" of peace officers from another jurisdiction. *Id.* The agreement at issue must "authorize[] the exercise of peace officer or police powers." *Id.* If it applied here, subdivision 12 could arguably provide local officers with "the full and complete authority" of ICE officers.

Subdivision 12 does not define "peace officer," but the term is defined several places in Minnesota law.[2] Most of these definitions "limit the meaning of peace officer to peace officers licensed by the [Minnesota] Board of Peace Officer Standards and Training[.]" *Minnesota v. Lake Minnetonka Conservation Dist.*, 605 N.W.2d 405, 408 (Minn. Ct. App. 2000), *aff'd in part & rev'd in part*, 617 N.W.2d 789 (Minn. 2000). Some expand it to include officers from other states. *See id;* Minn. Stat. §§ 626.71, subd. 2; 609.487, subd. 2; 626.76, subd. 3. But no definition of "peace officer" in Minnesota law includes federal officers. ICE officers are therefore not "peace officers" as defined in Minnesota law and jurisprudence and 287(g) agreements do not authorize the exercise of peace officer powers by local law enforcement.

"Police power" is also not defined in subdivision 12, but that term describes the power of the states, not the federal government.[3] ICE, a federal agency whose authority is limited to

---

[2] *See* Minn. Stat. §§ 626.05, subd. 2; 626.71, subd. 2; 626.84, subd. 1(c); 44.01, subd. 8a; 169.791, subd. 1(f); 604.16, subd. 2l; 609.487, subd. 2; 626.76, subd. 3.

[3] *See, e.g., Gretsch v. Vantium Cap., Inc.*, 846 N.W.2d 424, 433 (Minn. 2014) ("[W]e start with the assumption that the historic police powers of the states were not superseded by the federal act

(Footnote Continued on Next Page)

immigration enforcement, not general criminal law enforcement, therefore does not exercise "police powers." Because a 287(g) agreement is not an agreement for "the exercise of peace officer or police powers, subdivision 12 is inapplicable and does not expand the authority of officers acting under 287(g) agreements.

Even where subdivision 12 applies, it can only authorize officers to exercise the authority of Minnesota peace officers. The Minnesota legislature clearly lacks authority to authorize persons to exercise powers of law enforcement officers from non-Minnesota jurisdictions. In particular, the Minnesota legislature cannot authorize officers to exercise the powers of ICE officers, which are granted by the federal government.[4]

Subdivision 12's text confirms it does not purport to do so. It provides officers with authority "as though appointed by both governmental units *and licensed by the state of Minnesota*." Minn. Stat. § 471.59, subd. 12 (emphasis added). Only Minnesota peace officers need be licensed by Minnesota. It would make no sense to include this provision if subdivision 12 authorized agents to exercise federal law enforcement powers. Moreover, subdivision 12 requires officers to have completed education "comparable to Minnesota peace officer preemployment education," which indicates it anticipates officers exercising the powers of Minnesota peace officers.

For these reasons, Minnesota law enforcement officers acting under 287(g) agreements have no greater authority under state law than they otherwise have. In particular, the state law prohibition on holding a person based solely on an immigration detainer applies to officers acting under 287(g) agreements.

---

unless that was the clear and manifest purpose of Congress."); *Dean v. City of Winona*, 843 N.W.2d 249, 256 (Minn. Ct. App. 2014) ("Generally, police power 'refers to the power of the state and its political subdivisions to impose such restraints upon private rights as are necessary for the general welfare.'"); *Abeln v. City of Shakopee*, 28 N.W.2d 642, 645 (Minn. 1947) ("[T]he original Constitution did not deprive the states of their police power…"); *United States v. Morrison*, 529 U.S. 598, 618 (2000) (the Founders "denied the National Government" the police power "and reposed [it] in the States"); *United States v. Lopez*, 514 U.S. 549, 566 (1995) (Constitution "withholds from Congress a plenary police power"); *United States v. Koutsos*, 2018 WL 523944, at *5 (S.D. Miss. Jan. 23, 2018) ("[P]rinciples of federalism suggest that federal law enforcement…lacks the general police powers reserved for the state.").

[4] Further, reading subdivision 12 to grant Minnesota officers with the authority of ICE officers would arguably tacitly authorize Minnesota officers to violate state laws that prohibit Minnesota officers from arresting persons based on civil immigration offenses. There is no indication the legislature intended this, further supporting the conclusion that subdivision 12 does not authorize the exercise of federal law enforcement powers.

**B.    Federal law does not authorize local law enforcement officers acting under 287(g) agreements to make arrests prohibited by state law.**

The second question is whether federal law authorizes local officers acting under 287(g) agreements to detain persons pursuant to immigration detainers even if doing so is prohibited by state law. For the reasons below, federal law does not displace state law obligations for officers acting under 287(g) agreements.

Under the U.S. Constitution's Supremacy Clause, federal law can sometimes preempt state law. *See, e.g., Hous. & Redevelopment Auth. of Duluth v. Lee*, 852 N.W.2d 683, 687 (Minn. 2014). "Federal law can preempt state law in three ways: through (1) field preemption, (2) express preemption, and (3) conflict preemption[.]" *Id.*

"Field preemption exists where 'Congress has forbidden the State to take action in the *field* that the federal statute pre-empts." *Pharm. Research & Mfrs. of Am. v. McClain*, 95 F.4th 1136, 1140 (8th Cir. 2024) (quoting *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015)) (emphasis in original). There is no field preemption here because Congress did not (and likely could not) prevent states from regulating the conduct of their own officers. In fact, section 287(g) authorizes agreements only "to the extent consistent with State and local law." 8 U.S.C. § 1357(g). By commanding that officers adhere to state and local law while operating under a 287(g) agreement, Congress clearly did not forbid states from taking action in this field. *See Nash v. Mikesell*, 557 P.3d 369, 378 (Colo. Ct. App. 2024) ("Colorado's prerogative to regulate its police powers" is not preempted by section 287(g)); *City of El Cenizo v. Texas*, 890 F.3d 164, 178 (5th Cir. 2018) (section 287(g) "indicates that some state and local regulation of [immigration enforcement] cooperation is permissible").

"Express preemption exists where Congress uses 'explicit pre-emptive language' to express its purpose." *In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig.*, 621 F.3d 781, 792 (8th Cir. 2010) (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992)). Nothing in section 287(g) expressly preempts state law. In fact, section 287(g) *denies* preempting state law by authorizing agreements permitting state and local officials to take actions only "to the extent consistent with State and local law." 8 U.S.C. § 1357(g)(1).

And "conflict pre-emption exists where 'compliance with both state and federal law is impossible,' or where 'the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Pharm. Research*, 95 F.4th at 1140 (quoting *Oneok*, 575 U.S. at 377). Section 287(g) does not require anything at all because 287(g) agreements are optional. *See* 8 U.S.C. § 287(g)(9). Because section 287(g) does not mandate anything, it is possible to comply with both section 287(g) and Minnesota law, so there is no conflict preemption. *See United States v. California*, 921 F.3d 865, 890 (9th Cir. 2019) ("[T]he choice of a state to refrain from participation cannot be invalid under the doctrine of obstacle preemption where, as here, it retains the right of refusal."); *Nash*, 557 P.3d at 377 (no conflict preemption "[g]iven the discretionary, not compulsory, language of 8 U.S.C. § 1857(g)(1)").

The analysis above is bolstered by the fact that the Colorado Court of Appeals recently decided that a Colorado law prohibiting holding a person on an immigration detainer applied to officers operating under a 287(g) agreement. *See Nash*, 557 P.3d at 377–79. That court determined that local law enforcement officers who enforce immigration law under a 287(g) agreement "remain subject to Colorado law even though they are *also* subject to federal law while performing immigration enforcement functions." *Id.* at 377. The court noted that "compliance with local law is a condition precedent to local law enforcement's performance of immigration enforcement functions under a 287(g) agreement." *Id.* at 378. The same holds true for Minnesota officers.

## CONCLUSION

Minnesota law permits counties to enter 287(g) agreements, but such agreements must comply with the requirements of the Joint Powers Act. That requires, among other things, that the agreement be entered into by a resolution of the county board of commissioners

Even a valid 287(g) agreement does not permit officers to detain persons based solely on ICE immigration detainers or take any other actions violating Minnesota law. Officers or agencies who do so may expose themselves to liability. *See Lundeen v. Renteria*, 224 N.W.2d 132, 146 (Minn. 1974).

Sincerely,

KEITH ELLISON
Attorney General
State of Minnesota